**Clark DAVIS, Petitioner–Appellant,**

v.

**Dan M. REYNOLDS, Warden; and Robert H. Henry, Attorney General, Respondents–Appellees.**

No. 88–1673.

United States Court of Appeals, Tenth Circuit.

Nov. 30, 1989.

Gary Peterson, Oklahoma City, Okl., for petitioner-appellant.

Timothy S. Gilpin, Asst. Atty. Gen. (Robert H. Henry, Atty. Gen. of Okl., and Rozia McKinney–Foster, Asst. Atty. Gen., Deputy Chief, Federal Div., on the brief), Oklahoma City, Okl., for respondents-appellees.

Before McKAY and ANDERSON, Circuit Judges, and BRATTON,* District Judge.

---

STEPHEN H. ANDERSON, Circuit Judge.

Clark A. Davis appeals from the district court's order dismissing his petition for a writ of habeas corpus. He contends that the state trial court improperly excluded the general public and the press from his trial during a complaining witness's testimony, thereby violating his Sixth Amendment right to a public trial. That argument was presented to and rejected by the Oklahoma Court of Criminal Appeals, which affirmed Davis' conviction in the state district court. *Davis v. State*, 728 P.2d 846 (Okla.Crim.App.1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3189, 96 L.Ed.2d 677 (1987). Davis then filed a post-conviction application for relief in the Oklahoma trial court. The state trial court denied relief, and its decision was affirmed by the Oklahoma Court of Criminal Appeals. *Davis v. State*, No. PC–87–810 (Okla.Crim.App. Nov. 9, 1987). Davis then petitioned the federal district court for a writ of habeas corpus. The district court dismissed Davis' petition, and this appeal followed. After reviewing the record and examining Davis' arguments, we reverse the decision of the district court, and remand with instructions.

## BACKGROUND

On April 10, 1984, an Oklahoma jury found Davis guilty of three counts of rape in the first degree. The trial court sentenced Davis to three consecutive prison terms of thirty years each. According to the evidence at trial, three sixteen year old girls who had been roommates at a juvenile facility in Tahlequah, Oklahoma, walked and/or hitchhiked to Checotah, Oklahoma to the home of Carolyn Stevens, one of the girls' aunt. At that time, Davis was living in the Stevens home. One of the girls testified that Davis raped her on three different occasions during their overnight stay in the Stevens home.[1] Although she

---

\* The Honorable Howard C. Bratton, Senior Judge, U.S. District Court for the District of New Mexico, sitting by designation.

1. There appears to have been some confusion at trial as to the exact age of the complaining witness. The trial court judge stated, as one of the reasons for closing the courtroom, that she was fifteen years old. Although a state court's determination of a factual issue is entitled to a "presumption of correctness" on review in fed-

testified that Davis had not actually wielded a weapon during any of these rapes, she testified that she was scared by Davis, and that she continued to object verbally and physically during each of the rapes. She also testified that she had witnessed Davis rape her companion, another sixteen year old girl, while the two girls were in the same bed together.

At Davis' trial, before the jury was impaneled or any testimony had been taken, the prosecutor requested that "the public be excluded" during the complaining witness' testimony. R.Supp.Vol. I, Transcript of Jury Trial, at 3 (hereinafter "Trial Tr."). The prosecutor noted that the judge at the preliminary hearing had cleared the courtroom during this witness' testimony, that the witness had experienced "some emotional and psychological trauma associated with this incident,"[2] and that the defendant would not be prejudiced by clearing the courtroom. The prosecutor summarized: "it is just the matter of saving her some embarrassment and humiliation; we feel it is purely discretionary with the court and since there is no prejudice to the defendant we would urge the motion be granted." Trial Tr. at 4.

Davis' attorney objected, asserting:

"[T]here is no evidence or doctor's report or psychologist or psychiatrist report which would indicate her testifying in court is going to cause any traumatic harm to her mental condition. If there was a report in the record stating that was the case it might be a different story, but I think she is the complaining witness and I think she is not entitled to have the exclusion of all members of the general public from the courtroom. The defendant is entitled to a speed[y] public trial, if you exclude [the] public [from] portions of the trial I think all it would do really would be to facilitate or cause people to ... tell less of the truth, ... not [to] be fair and cand[id] in their testimony in open court...."

*Id.* at 5, 6. Finally, the prosecutor informed the judge that "the witness we are talking about is under the age of sixteen, she is a minor...." *Id.*

Without taking any evidence concerning the witness' condition, and without interviewing the witness or her parents, the trial court granted the motion to exclude the public during the complaining witness' testimony. The court cited its reasons for the closure: "one, the age of the alleged victim is fifteen years, if she was in a juvenile proceedings the public would be

---

eral courts, *Sumner v. Mata,* 449 U.S. 539, 549, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981), the trial court's statement in this instance came before any evidence had been presented. Furthermore, the girl's own testimony, uncontradicted at trial, was that she was sixteen years old. Trial Tr. at 35. Under these circumstances, the trial court's statement was clearly erroneous. *See Ewing v. Winans,* 749 F.2d 607, 609 (10th Cir.1984) (where appellant proves by convincing evidence that state court's factual determination was wrong, federal courts may disregard state court's determination.) Because the recorded testimony proves convincingly that the witness was sixteen years old, the facts recited in this opinion reflect the witness' age as sixteen.

**2.** In discussing the motion to close the courtroom, both at the preliminary hearing, and again at trial, some reference was made by both attorneys to a clinical psychologist whom the complaining witness had apparently consulted. R.Supp.Vol. I, Transcript of Preliminary Hearing at 39; Trial Tr. at 4. The psychologist was not identified, and the nature or extent of the

consultation was never disclosed. Although the prosecutor made representations at the time of the preliminary hearing that the psychologist was of the opinion that in camera examination of the witness would be beneficial to her, no actual report or testimony was offered to either support or explain this broad representation, nor did the judge at the preliminary hearing request such evidence. Davis' counsel repeatedly objected to any inference that might be drawn from the mere fact that the witness had consulted a psychologist:

"Your Honor, of course, [the prosecutor] says there is a possibility [of harm to the witness], that is not good enough; if they want to bring the clinical psychologist and let her testify ... that it is going to have a detrimental effect on that young lady, fine, but until such time as you have some testimony ... we are going to object to excluding anybody from the courtroom."

Prelim.Tr. at 40. The trial court, in its explanation for granting the closure motion, neither referred to nor relied upon this fact or the prosecutor's representations at the preliminary hearing concerning the psychologist's opinion.

excluded anyway; secondly, the defendant will have a right to confrontation, the jury will be there and can observe the demeanor and trustworthiness of the witness and I don't see that the defendant is prejudiced by it...." *Id.* at 6. When the prosecution called the complaining witness to take the stand, the trial court ordered that "all the spectators will have to leave the courtroom; the courtroom will be closed for purpose of taking testimony of this witness only." *Id.* at 32.

## SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL

 A criminal defendant has a constitutional right to insist on a public trial.[3] The explicit language of the Sixth Amendment guaranteeing every criminal defendant a "speedy and public trial," is undoubtedly for the protection of the accused. *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 380, 99 S.Ct. 2898, 2905–06, 61 L.Ed.2d 608 (1979); *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). One of the major purposes for the public trial guarantee, as Davis' counsel correctly stated, is to safeguard the defendant from potentially perjurious or abusive testimony. *See Estes v. Texas,* 381 U.S. 532, 588, 85 S.Ct. 1628, 1662, 14 L.Ed.2d 543 (1965) (Harlan, J., concurring) ("[T]he public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings.").

 Although the right to an open trial is not absolute, that right will only rarely give way to other interests. *Waller v. Georgia,* 467 U.S. 39, 45, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984) ("[T]he right to an open trial may give way in certain cases

to other rights or interests.... Such circumstances will be rare however...."). An accused's right under the Sixth Amendment must be carefully balanced against the government's competing interest in protecting vulnerable witnesses from embarrassment and harm. Speaking of the right to a public trial, the United States Supreme Court has said:

"The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered."

*Waller,* 467 U.S. at 45, 104 S.Ct. at 2215 (1984) (quoting *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984)); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 100 S.Ct. 2814, 2829–30, 65 L.Ed.2d 973 (1980) ("Absent an overriding interest, articulated in findings, the trial of a criminal case must be open to the public.").[4]

Recent decisions have developed a more lenient standard for closure orders which only partially exclude the public or are otherwise narrowly tailored to specific needs. *See Nieto v. Sullivan,* 879 F.2d at 753 (Where state appeals court observed that only the defendant's relatives were excluded, and only during one witness' testimony, such a partial closure is subject to a lesser, "substantial reason" standard rather than the strict "overriding interest" standard applicable to total closures.); *United States v. Sherlock,* 865 F.2d 1069, 1077 (9th Cir.1989) (trial court's exclusion of defendant's relatives during portions of trial upheld under more lenient test for

---

**3.** The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury ..." U.S. Const. amend. VI. We discuss only the federal constitutional issues involved in this case. Alternative state claims, whether grounded in state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a). *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1983).

**4.** *Waller* applies to this case even though the jury verdict predated the May 1984 Supreme Court *Waller* decision. The State Court of Criminal Appeals' decision affirming the conviction was filed on October 7, 1986. Under the test of finality in *Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 1067, 103 L.Ed.2d 334 (1989), Davis' conviction was not final until after the *Waller* decision, and *Waller* applies. *See Nieto v. Sullivan,* 879 F.2d 743, 751 n. 14 (10th Cir.1989).

partial closures); *Douglas v. Wainwright,* 739 F.2d 531, 532–33 (11th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985) ("impact of partial closure is 'not a kind presented when a proceeding is totally closed to the public, and therefore only a "substantial" rather than "compelling" reason for the closure is necessary.' ").

The trial court's order in this case made no exceptions for members of the press or for relatives of the defendant. We are not faced, therefore, with a partial closure or a closure tailored to protect the conflicting interests of the defendant in a public hearing and the government's interest in protecting a susceptible or vulnerable witness. We therefore apply the "overriding interest" standard articulated in *Waller* to the trial court's order.

■ To justify an order completely excluding the public from portions of a criminal proceeding, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia,* 467 U.S. at 48, 104 S.Ct. at 2216. The prosecutor's best articulation of the government's interest in the closure of Davis' trial was that "we are trying to save [the witness] some problem and embarrassment." Trial Tr. at 6. Although the prosecutor hinted at some vague psychological problems that could possibly accompany the witness' testifying, it is not clear from the record what specific problems were foreseen, why they would have occurred, or whether those problems would in any way be ameliorated by closing the courtroom.

Applying the test developed in *Waller* to the case before us, the record reveals that the trial court failed to inquire into the factual basis for the government's assertion that the witness' emotional and psychological condition warranted the extraordinary precaution of courtroom closure. The court made no findings in support of its order to exclude all spectators during the testimony, except to take notice of the witness' age. As previously noted, the court did not narrowly tailor its order to protect the witness from psychological or emotional harm; the court failed to consider any alternatives to a blanket exclusion of the entire audience during the witness' testimony.

■ The government clearly has a compelling interest in protecting youthful witnesses who are called upon to testify in cases involving sensitive and painful issues; those types of issues are very likely to appear in cases involving alleged sexual offenses. *See, e.g., Globe Newspaper Co. v. Superior Ct. for Norfolk County,* 457 U.S. 596, 607, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982) ("[S]afeguarding the physical and psychological well-being of a minor ... is a compelling [interest]."); *United States ex rel. Latimore v. Sielaff,* 561 F.2d 691 (7th Cir.1977), *cert. denied,* 434 U.S. 1076, 98 S.Ct. 1266, 55 L.Ed.2d 782 (1978) (recognizing that protection of rape victim's dignity is a substantial governmental interest). The Supreme Court has acknowledged that the age of a victim and the type of the offense alleged are valid considerations in weighing the accused's right to a public trial and the government's interest in protecting the victim from undue harm. *Globe Newspaper Co.,* 457 U.S. at 608, 102 S.Ct. at 2621.

■ Considerations of a victim's age and the nature of the offense involved support a closure only when they form part of a careful case-by-case analysis of each individual situation. They do not justify an automatic, general exclusion of the public in every case involving a young victim and sordid or heinous allegations. Thus, the Supreme Court rejected a Massachusetts statute requiring mandatory courtroom closure in cases involving minor victims of sexual crimes. *Globe Newspaper Co. v. Superior Court for Norfolk County,* 457 U.S. 596, 607–08, 102 S.Ct. 2613, 2620–21, 73 L.Ed.2d 248 (1982) (mandatory blanket closure violates First Amendment right to access to criminal proceedings); *see Waller v. Georgia,* 467 U.S. at 46, 104 S.Ct. at 2215 ("[T]he explicit Sixth Amendment right of

the accused is no less protective of a public trial than the implicit First Amendment right of the press and public.").

The trial court's order excluding the public from the witness' testimony, without any inquiry or findings concerning the specific condition of the witness in this case, is essentially equivalent to the blanket legislative closure rejected in *Globe Newspaper.*

▉ Improper denial of a criminal defendant's Sixth Amendment right to a public trial ordinarily constitutes reversible error; the defendant need not show any resulting prejudice from the closure. *See Waller v. Georgia,* 467 U.S. at 49 n. 9, 104 S.Ct. at 2217 n. 9 ("[T]he settled rule of the federal courts [is] that a showing of prejudice is not necessary for reversal of a conviction not had in public proceedings.") (quoting *Levine v. United States,* 362 U.S. 610, 627 n. 1, 80 S.Ct. 1038, 1048 n. 1, 4 L.Ed.2d 989 (1960) (Brennan, J., dissenting)). Because the right to a public trial protects the defendant from very subtle but very real injustices, "it would be difficult to envisage a case in which [the defendant] would have evidence available of specific injury" resulting from denial of that right. *Waller v. Georgia,* 467 U.S. at 49 n. 9, 104 S.Ct. at 2217 n. 9 (quoting *United States ex rel. Bennett v. Rundle,* 419 F.2d 599, 608 (3d Cir.1969)). Requiring such a

defendant to prove actual prejudice would deprive most defendants of the right to a public trial. *Nieto v. Sullivan,* 879 F.2d at 753 n. 15 ("We are persuaded that once a violation is found of a defendant's right to a public trial, the defendant should not be required to prove prejudice....").

▉ Davis raises two additional grounds for reversing the district court's order. His first additional claim is that his right to a public hearing was also violated when the preliminary hearing was closed to the public during the testimony of the same complaining witness discussed above. We find that Davis has waived any objection to errors and irregularities of this character that may have arisen in the preliminary hearing by proceeding to trial on the merits of his case without filing a motion to quash or otherwise objecting to the preliminary hearing findings.[5] *See Cindle v. Page,* 452 F.2d 752, 53–54 (10th Cir.1971) (Oklahoma trial court was correct in holding that defendant had waived objections to defects in preliminary proceedings by entering plea in state district court). Davis' final claim is based on his allegation that he was denied his choice of counsel at trial. Because our decision entails a new state court trial as a precondition to Davis' further incarceration, Davis' choice of counsel claim is now

---

5. Under Oklahoma law, a preliminary hearing is waived by proceeding to trial on the merits. Likewise, irregularities during the preliminary hearing are ordinarily waived unless raised by a motion to quash the information. *Martin v. State,* 463 P.2d 995, 997 (Okla.Crim.App.1970) ("The entire preliminary proceedings may be waived in the trial court and is waived by failure to file motion to quash or set aside as provided by the statute before entering a plea on the merits.") (quoting *Parker v. State,* 330 P.2d 1049 (Okla.Crim.App.1958)); *Blake v. State,* 375 P.2d 270, 273 (Okla.Crim.App.1962) ("If the defendant upon arraignment pleads to the merits and enters on the trial, he waives the right to preliminary examination, or if one was held, any irregularities therein.") (quoting *Muldrow v. State,* 185 P. 332 (Okla.Crim.App.1919)); *see also Sparks v. State,* 71 Okl.Cr. 430, 112 P.2d 434 (Okla.Crim.App.1941) (where one is charged in the district court by information, and desires to raise the question of not having had a preliminary examination ... this should be done by a plea in abatement, or by motion to quash the information.). Davis made no motion prior to

trial to quash or set aside the findings of the preliminary hearing, he has therefore waived the objection he may otherwise have had. Additionally, because any resulting retrial will appropriately safeguard Davis' Sixth Amendment right to a public trial, it is difficult to envision any prejudice resulting from the original preliminary hearing which will not be cured by a proper public trial. If a retrial, held in conformance with the Sixth Amendment's requirements, results in a verdict of guilt beyond a reasonable doubt, it can hardly be said that a second preliminary hearing may not support a finding of probable cause to bind Davis over for trial. Therefore, to order a new preliminary hearing at this late stage would merely be a "windfall" for Davis; a remedy not required by the Sixth Amendment. *See Waller,* 467 U.S. at 50, 104 S.Ct. at 2217 ("[T]he remedy [for a pretrial Sixth Amendment public trial violation] should be appropriate to the violation." A new trial in that case would have been a "windfall for the defendant, and not in the public interest.").

moot. We therefore do not address that issue.

## CONCLUSION

 The trial court improperly violated Davis' Sixth Amendment right to a public trial by failing to articulate specific, reviewable findings adequate to support the general closure of the courtroom during the complaining witness' testimony. Davis is therefore entitled to habeas corpus relief. We are free, however, to fashion the remedy as law and justice require;[6] we are not required to order Davis' immediate release from physical custody. *See Carafas v. LaVallee,* 391 U.S. 234, 238–39, 88 S.Ct. 1556, 1559–60, 20 L.Ed.2d 554 (1968) ("The federal habeas corpus statute . . . does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted."). We therefore reverse the district court's decision and remand the case for further proceedings as follows: judgment to be entered granting habeas relief and vacating Davis' conviction if the state has not elected to retry him within a reasonable period of time to be determined by the district court.

REVERSED AND REMANDED.

---

**6.** The federal habeas statute empowers the federal courts to dispose of the matter "as law and justice require." 28 U.S.C. § 2243; *Parks v.*

*Brown,* 860 F.2d 1545, 1559 n. 15 (10th Cir. 1988), *cert. granted, Saffle v. Parks,* — U.S. ——, 109 S.Ct. 1930, 104 L.Ed.2d 402 (1989).