**STATE of Minnesota, Respondent,**

v.

**Richard Russell FAGEROOS,**
**Jr., Petitioner, Appellant.**

No. C1–93–2453.

Supreme Court of Minnesota.

May 5, 1995.

John M. Stuart, State Public Defender, Steven P. Russett, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Cheryl W. Heilman, Asst. Atty. Gen., St. Paul, and John Remington Graham, Crow Wing County Atty., Brainerd, for respondent.

## OPINION

COYNE, Justice.

This is a criminal appeal by the defendant, Richard Russell Fageroos, Jr., who was convicted by a jury of burglary and criminal sexual conduct, both in the first degree, and sentenced by the trial court to 244 months in prison. On direct appeal from judgment of conviction, defendant contended, *inter alia*, that a new trial was required because the trial court plainly erred in closing the courtroom during the testimony of the complainant and her sister, both minors. The court of appeals, while affirming on all other issues, remanded to the trial court for "findings to support the closure" of the trial. *State v. Fageroos*, No. C0–92–1896, 1993 WL 268366 (Minn.App. July 20, 1993) (unpublished opinion) (hereafter *Fageroos I*). After the trial court made findings on remand, defendant again sought relief from the court of appeals, claiming the findings were inadequate to support closure. The court of appeals affirmed. *State v. Fageroos*, No. C1–93–2453, 1994 WL 193820 (Minn.App. May 17, 1994) (unpublished opinion) (hereafter *Fageroos II*). While the court of appeals was correct in remanding in *Fageroos I*, it should have remanded not just for findings but for an evidentiary hearing. While the record on appeal fails to support closure, we believe the case should be remanded again so the state may have the opportunity to establish, if it can, that closure was necessary. If the state cannot establish that closure was necessary, then defendant is entitled to a new trial.

Sometime around 2 a.m. one morning in June of 1991 P.A.F., age 15, and her 12-year-old sister were asleep in their bedroom in the family home when a man entered the bedroom and began sexually assaulting P.A.F. The assaultive conduct included kissing complainant, fondling her breasts, and digitally penetrating her vagina. The man threatened complainant but left after complainant, who feared she might get hurt "really bad," told him she was going to get her father. Complainant's sister was awakened by the intrusion and witnessed the assault.

The girls woke their mother and told her that defendant—who is related by marriage to their father—had been in their room and had touched complainant's "private parts." The mother immediately checked and found the kitchen door wide open to the outdoors. Later that morning the mother called her

daughter's counselor and then, on the advice of the counselor, called the sheriff.

The trial court closed the courtroom to spectators during the testimony of the two girls. Following is the entire trial record relating to closure:

> MR. SAUSEN [the prosecutor]: Your Honor, at this time we would request that all—
>
> THE COURT: Mr. Green, we're going to have some further testimony in which we're going to have to ask that the four observers in the back wait out in the hall for us for the next couple of witnesses. (At this point the courtroom is cleared of spectators.)
>
> MR. SAUSEN: State calls [P.A.F.] to the stand.
>
> MR. RUTTGER [defense counsel]: Your Honor, may we approach the Bench?
>
> THE COURT: Certainly.
>
> (Off the record discussion.)

In short, the record does not indicate whether the trial court complied with the requirements of Minn.Stat. § 631.045 (1994) or the requirements of the decisions of the United States Supreme Court and this court relating to closure, nor whether the defendant either consented to or objected to closure.

Minnesota Statute § 631.045 provides:

> At the trial of a complaint or indictment for a violation of sections 609.341 to 609.346, or 617.246, subdivision 2, when a minor under 18 years of age is the person upon, with, or against whom the crime is alleged to have been committed, the judge may exclude the public from the courtroom during the victim's testimony or during all or part of the remainder of the trial upon a showing that closure is necessary to protect a witness or ensure fairness in the trial. The judge shall give the prosecutor, defendant and members of the public the opportunity to object to the closure before a closure order. The judge shall specify the reasons for closure in an order closing all or part of the trial. Upon closure the judge shall only admit persons who have a direct interest in the case.

The statute provides a procedure for the trial court to follow when contemplating closure of trial. However, the question whether closure is proper is ultimately a constitutional issue, not a statutory issue. Both United States Const.Amend. VI and Minn. Const. art. I, § 6, provide that "[i]n all criminal prosecutions the accused shall enjoy the right to a * * * public trial * * *."

> Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process. And in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government.

*Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 606, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982) (footnotes omitted).

However, the right to a public trial is not an absolute right. *Id.* "[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Waller v. Georgia*, 467 U.S. 39, 45, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984); *see, e.g., Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). In *Waller*, the United States Supreme Court articulated the appropriate standard for determining whether closure is justified.

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller,* 467 U.S. at 48, 104 S.Ct. at 2216 (citing *Press–Enterprise,* 464 U.S. at 510, 104 S.Ct. at 824).[1]

■■■ One recognized "overriding interest" is safeguarding the physical and psychological well-being of a minor. *Globe Newspaper Co.,* 457 U.S. at 607, 102 S.Ct. at 2620. Although protection of minor victims of sexual offenses constitutes a compelling interest, it does not justify closure of the courtroom each and every time a minor testifies. On the contrary, a case-by-case determination must be made by the trial court, a determination that is made upon the consideration of several factors. *Id.* at 607–08, 102 S.Ct. at 2620–21 (the compelling nature of the interest in protecting the physical and psychological well-being of minors does not justify a mandatory closure rule, "for it is clear that the circumstances of the particular case may affect the significance of the interest. A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim.") (footnote omitted). Factors to be considered by the trial court include "the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." *Id.* at 608, 102 S.Ct. at 2621 (footnote omitted).[2]

■■■ The trial court must articulate its findings with specificity and detail supporting the need for closure. *See Waller,* 467 U.S. at 48, 104 S.Ct. at 2216 (where the Court held closure of a 7–day suppression hearing was unjustified where the State failed to be sufficiently specific in its reasons justifying closure: "As a result, the trial court's findings were broad and general, and did not purport to justify closure of the entire hearing."). Requiring the trial court to be specific in its justification for closure avoids a blanket exclusion of people from the courtroom simply because a minor testifies. *See Globe Newspaper Co.,* 457 U.S. at 608, 102 S.Ct. at 2621.

A number of decisions illustrate the application of these principles. In *Davis v. Reynolds,* 890 F.2d 1105, 1108 (10th Cir.1989), the trial court granted the prosecutor's motion to exclude the entire public during a minor complainant's testimony "[w]ithout taking any evidence concerning the witness' condition, and without interviewing the witness or her parents * * *." In justifying its order, the trial court took notice that the alleged victim was 15 years old. *Id.* "Although the prosecutor hinted at some vague psychological problems that could possibly accompany the witness' testifying, it is not clear from the record what specific problems were foreseen, why they would have occurred, or whether those problems would in any way be ameliorated by closing the courtroom." *Id.* at 1110. On the contrary, the trial court failed to inquire into the factual basis for the government's assertion that the witness' emotional and psychological condition warranted the extraordinary precaution of closure and made no findings in support of the order except to take notice of age. *Id.*

Mirroring *Davis* is a recent case we decided, *State v. McRae,* 494 N.W.2d 252 (Minn. 1992). One of the issues in *McRae* was whether the trial court erred in closing the courtroom to spectators during the testimony of the 15–year–old complainant. The prosecutor there argued that closing the courtroom would be of great assistance because the complainant had made it known that she was reluctant to testify. The trial court, over

1. Although the test was articulated in *Press–Enterprise* in the context of the First Amendment, the *Waller* Court stated, "[T]here can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." 467 U.S. at 46, 104 S.Ct. at 2215.

2. The record discloses that the trial was twice continued; the first continuance was occasioned by the illness of the trial judge. Following denial of his request for a second continuance, the defendant gave vent to his dissatisfaction with the ruling in a very crude and emotional outburst which caused the judge to order a continuance so that a new jury pool could be drawn. Inasmuch as the judge's record comments indicate the visible effect of the defendant's outburst on the prospective jurors who witnessed it, it is possible that the event influenced the judge's decision about closure. Since, however, the record does not reveal whether either the complainant or her younger sister were even present at the time of defendant's performance, we can only speculate that if they saw and heard it, the minor witnesses might have been intimidated by it.

objection by defense counsel, ruled that closing the courtroom was "appropriate in these circumstances, given the fact that she's 15 years old and that she did appear to the Court [in an off-the-record hearing] to be extremely apprehensive about her appearance here today." *Id.* at 258. "Although it appear[ed] that the trial court interviewed the minor complainant before ordering closure during her testimony, that interview was not recorded." *Id.* at 259. Moreover, "[t]he record [did] not disclose evidence or findings of a showing that closure was necessary to protect the witness or insure fairness in the trial." *Id.* We said, "On the record before us we cannot say that there has been compliance with the requirements set out in *Waller v. Georgia,* 467 U.S. at 45, 47, [104 S.Ct. at 2215, 2216]." *McRae,* 494 N.W.2d at 259; *see also State v. Schmit,* 273 Minn. 78, 139 N.W.2d 800 (1966) (decided nearly 20 years before *Waller,* where we held that the trial court erred in excluding everyone from the trial of a criminal case except attorneys and members of the press because of the nature of the crime).

· ■ The difficult issue in this case is in determining the appropriate remedy at this point. Defendant urges us to award him a new trial. In *McRae* we said:

> *Waller* * * * made it clear that the remedy should be appropriate to the violation. If a remand for a hearing on whether there was a specific basis for closure might remedy the violation of closing the trial without an adequate showing of the need for closure, then the initial remedy is a remand, not a retrial.

494 N.W.2d at 260 (citing *Waller,* 467 U.S. at 49, 104 S.Ct. at 2217).

As we said at the outset, while the court of appeals was correct in remanding in *Fageroos I,* it should have remanded not just for findings but for an evidentiary hearing. We will not speculate as to why the county attorney on the initial remand made no effort to supplement the record, but it is possible that he was influenced by the wording of the remand, which was for "findings." It appears that in the interim a new county attorney has taken office. We believe that the county attorney should be given an opportunity to establish, if he can, that closure was necessary. If the county attorney is unable to do so, then defendant is entitled to a new trial. This is because, as we said in *McRae,* "[D]enial of the sixth amendment right to a public trial is not subject to harmless error impact analysis." *McRae,* 494 N.W.2d at 260 (citing *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Waller,* 467 U.S. at 49, 104 S.Ct. at 2217).

Remanded to district court for an evidentiary hearing with respect to the necessity of closure during the testimony of the minor complainant and her minor sister.

TOMLJANOVICH, Justice (dissenting).

I respectfully dissent. I would remand this case for a new trial.

I can appreciate that it will be embarrassing and awkward for the alleged victim and her sister to testify with spectators present at the trial; however, that alone is not a sufficient basis on which to deny a public trial.

The majority has set forth the statutory and case law requirements which must be met before a trial may be closed to spectators. The majority also cites the trial record which clearly indicates that those requirements were not met.

The trial was held in February 1992. To permit an evidentiary hearing at this late date to justify the closure is in my opinion inappropriate.