# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3221

_____

Odell DePriest Crawford,      *
         *
     Petitioner - Appellant,      *
         *    Appeal from the United States
     v.      *    District Court for the
         *    District of Minnesota.
State of Minnesota,      *
         *
     Respondent - Appellee.      *

_____

Submitted: January 12, 2007
Filed: August 20, 2007

_____

Before LOKEN, Chief Judge, BYE and SHEPHERD, Circuit Judges.

_____

LOKEN, Chief Judge.

A Minnesota state court jury found Odell DePriest Crawford guilty of first-degree criminal sexual conduct, the rape of his girlfriend's thirteen-year-old daughter. On direct appeal, Crawford argued that the trial court violated his constitutional right to a public trial by partially closing the courtroom while the victim testified without making the findings required by Minn. Stat. § 631.045 and by State v. Fageroos, 531 N.W.2d 199, 201-202 (Minn. 1995). The Minnesota Court of Appeals rejected this argument, concluding that Crawford "waived the issue" because he did not object to the closure at trial. State v. Crawford, No. C4-01-2073, 2002 WL 31056664, at *1 (Minn. App. 2002). The Supreme Court of Minnesota denied discretionary review. After exhausting his state postconviction remedies, Crawford filed this petition for a

writ of habeas corpus, asserting numerous grounds for relief. The district court[1] denied the petition, concluding *inter alia* that Crawford's procedural default of his Sixth Amendment public trial claim is an independent and adequate state law ground that precludes federal habeas relief on that issue. Crawford appeals. We granted a certificate of appealability limited to the public trial issue. We now affirm.

## I.

The trial transcript reflects that after the jury was selected but before opening statements, the trial court stated to counsel:

> Okay. The record [will] reflect we are outside of the presence of the jury. There were a couple of matters that counsel wished to put on the record . . . before we begin the trial.

Counsel for Crawford responded first with a motion in limine, which the court granted. Defense counsel then stated, "It's also my understanding that Mr. Nolen [the prosecutor] is going to ask for . . . the courtroom to be closed during [the victim's] testimony." After resolving a witness scheduling issue, the court returned to this issue, saying, "Mr. Nolen, you had a request also." The prosecutor replied:

> Yes, Your Honor. I did indicate that the child who is going to testify wants to have her mother present. I talked to them, and the state will call the mother first with the understanding that she would then be able to remain in the courtroom while the child testifies. The child also has an aunt present who wishes to be present while she testifies. There is also an advocate . . . from my office who would be present. Other than that, I would ask the courtroom be closed while she testifies.

---

[1]The HONORABLE JOHN R. TUNHEIM, United States District Judge for the District of Minnesota, adopting the Report and Recommendation of the HONORABLE JONATHAN LEBEDOFF, United States Magistrate Judge for the District of Minnesota.

In response, defense counsel first acknowledged "that the statute allows, if the Court determines that it's necessary, for someone to be there to support a child alleged victim." Counsel then objected to allowing the victim's mother to be present, as well as her aunt and an advocate, on the ground that the mother might give nonverbal testimony not subject to cross examination, for example, by crying during the victim's testimony. The court ruled, "The state's request will be granted. The mother and advocate can be present in the courtroom."

Defense counsel then asked that his investigator "be allowed to be in the courtroom during the testimony." The court granted this request at the conclusion of counsels' opening statements. After the victim's mother testified as the first trial witness, the prosecution called the victim to testify. The record does not reflect that the courtroom was cleared or that anyone was asked to leave before this testimony, whether any member of the public was denied entry to the proceedings, or whether the courtroom was reopened following the victim's testimony. We assume, as the parties, the district court, and the Minnesota Court of Appeals have assumed, that the courtroom was closed in accordance with the trial judge's ruling.[2]

## II.

Anglo-American jurisprudence has for centuries recognized that openness "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508 (1984). But the right to a public trial is not absolute. A longstanding exception to the general principle is reflected in many cases holding that an otherwise public criminal trial may be closed, at least to the general public, when

---

[2]In his pro se objections to the magistrate judge's Report and Recommendation, Crawford asserted, "The victims grandmother was in the courtroom too." The record neither confirms nor refutes that assertion.

a young victim is called to testify regarding an alleged sexual offense. See Harris v. Stephens, 361 F.2d 888, 891 (8th Cir. 1966), cert. denied, 386 U.S. 964 (1967). The boundaries of that exception have been frequently tested in recent years.

Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 608 (1982), held that a state statute mandating closure of the courtroom when a minor victim testifies violated the First Amendment. However, the Supreme Court acknowledged, trial courts may "determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim." That same year, Minnesota enacted Minn. Stat. § 631.045, which provides that, after allowing the parties and members of the public to object, a trial court may exclude the public during trial of an enumerated sexual offense while a minor victim testifies "upon a showing that closure is necessary to protect a witness or ensure fairness in the trial," provided that the judge "specif[ies] the reasons for closure in an order."

In Waller v. Georgia, 467 U.S. 39, 46 (1984), the Supreme Court concluded that the Sixth Amendment's guarantee of a public trial "is no less protective . . . than the implicit First Amendment right of the press and public" to attend a trial. Accordingly, the Court held, to justify closing a trial or suppression hearing:

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

Id. at 48. The Court remanded for a new suppression hearing, rather than a new trial, leaving open to the state courts whether one defendant who did not object to closure "is procedurally barred from seeking relief as a matter of state law." Id. at 42 n.2.

Though denial of the right to a public trial is structural error that requires no showing of prejudice, see id. at 49-50, this confirms that the right may be waived.[3]

As Crawford acknowledges, federal habeas relief may not be granted on a federal claim that the state appellate court declined to address because the petitioner failed to meet a state procedural requirement constituting an "independent and adequate state ground." Coleman v. Thompson, 501 U.S. 722, 730 (1991). To be "independent and adequate," a state procedural bar must be "firmly established and regularly followed" by the time it is applied. Ford v. Georgia, 498 U.S. 411, 424 (1991). In a variety of contexts, Minnesota courts have invoked the principle that "district court errors -- even those affecting constitutional rights -- can be forfeited for purposes of appeal by the failure to make a timely objection in the district court." State v. Osborne, 715 N.W.2d 436, 441 (Minn. 2006). However, Crawford argues, his Sixth Amendment public trial claim is not procedurally barred because the Minnesota Court of Appeals ruling that failure to object constitutes a waiver of this claim has not been regularly followed by the Minnesota appellate courts. Whether the Minnesota Court of Appeals had a "fair or substantial basis" to determine that the issue was procedurally defaulted is a question of federal law. See Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999).

In State v. Fageroos, the Supreme Court of Minnesota applied Waller to the appeal of a sexual offense conviction. The trial court had summarily closed the courtroom to "four observers" while the minor victim and her sister testified. The record did not reflect compliance with the requirements of § 631.045 and Waller or

---

[3]For further confirmation that the constitutional right to a public trial may be waived, see Levine v. United States, 362 U.S. 610, 619 (1960). Of course, the issue here is whether waiver is an independent and adequate state law ground to deny federal habeas relief. Given our resolution of that issue, we need not reach the question whether Crawford waived his Sixth Amendment right as a matter of federal law. Compare White v. Bowersox, 206 F.3d 776, 780-83 (8th Cir.), cert. denied sub. nom. Luebbers v. White, 531 U.S. 917 (2000).

whether the defendant had consented or objected to the closure. 531 N.W.2d at 201. The Court concluded that "protection of minor victims of sexual offenses . . . does not justify closure of the courtroom each and every time a minor testifies." Therefore, "a case-by-case determination must be made," and the trial court "must articulate its findings with specificity and detail supporting the need for closure." Id. at 202. Rather than granting an automatic new trial, the Court remanded for an evidentiary hearing to determine whether there was a need for the closure.

A few months after the decision in Fageroos, the Minnesota Court of Appeals held in an unreported decision that "the failure of a defendant to object to a closure order does not waive the issue" for purposes of plain error postconviction review. As in Fageroos, the Court remanded for findings as to the need for closure. State v. Anderson, No. C2-95-1087, 1995 WL 747894, at *2 (Minn. App. Dec. 19, 1995). Similarly, in another unreported decision, Danforth v. State, No. C6-00-699, 2000 WL 1780244, at *5 (Minn. App. Dec. 5, 2000), the Court denied postconviction relief because defendant "made no attempt to explain how the district court's decision . . . met the plain error test."[4]

Anderson and Danforth seem inconsistent with the cryptic discussion of waiver by the Minnesota Court of Appeals in Crawford. However, in State v. Bashire, 606

_____

[4]In other unreported decisions where the Minnesota Court of Appeals remanded for findings or evidentiary hearings without addressing the waiver issue, the State either defaulted the issue on appeal, see State v. Biebinger, No. C6-97-2067, 1998 WL 566823 (Minn. App.), modified, 585 N.W.2d 384 (Minn. 1998), or the State conceded public trial error, see State v. Mussell, No. C9-01-285, 2001 WL 1356305, at *2 (Minn. App. Nov. 6, 2001); State v. Doll, No. C2-98-1167, 1999 WL 228137, at *1-2 (Minn. App. Apr. 20, 1999); State v. Fennern, No. C4-98-1347, 1999 WL 203509, at *1 (Minn. App. Apr. 13, 1999). On the other hand, in State v. Lindsey, 632 N.W.2d 652, 660-61 (Minn. 2001), the trial court without objection excluded two children from the courtroom during a murder trial. The Supreme Court of Minnesota denied a public trial challenge on the merits without discussing waiver, concluding this was not a "true closure."

N.W.2d 449, 452 (Minn. App. 2000), the case cited by the Court in <u>Crawford</u>, the Court of Appeals held that "by failing to object to courtroom closure and by agreeing to a limited closure, Bashire forfeited any error resulting from the absence of a finding supporting the closure." The <u>Bashire</u> court distinguished <u>Fageroos</u> because Bashire not only failed to object to the closure, his attorney affirmatively agreed to it. In <u>State v. Delacruz</u>, No. A03-129, 2004 WL 193058, at *4 (Minn. App. Feb. 3, 2004), decided after Crawford's trial and direct appeal, the Minnesota Court of Appeals again distinguished a defendant's "passive" failure to object, which under <u>Fageroos</u> does not waive the defendant's public trial rights under <u>Waller</u>, from a defendant who both fails to object and "explicitly agree[s] to limited closure of the courtroom," as in <u>Bashire</u>.[5]

These many decisions reflect a basic consistency in the way the Minnesota appellate courts apply the general doctrine of waiver to determine when a claim that the trial court failed to comply with the public trial mandates of § 631.045, <u>Fageroos</u>, and <u>Waller</u> has been procedurally defaulted. A defendant's passive failure to object to closing the courtroom while the victim of a sex offense testifies does not waive compliance with the requirements of a detailed inquiry into the need for closure and of appropriate findings. But if the defendant acting through his attorney agrees to closure (and assuming no member of the public lodges a First Amendment objection), the issue is procedurally defaulted on appeal. The distinction is logical -- often both the prosecution and the defense may agree that closure of the courtroom while a young victim testifies is, in the words of § 631.045, "necessary to protect a witness or ensure fairness in the trial." Moreover, the Minnesota courts understandably draw the procedural default line against a defendant who agrees to closure in the trial court and then claims on appeal that closure taints an adverse verdict.

---

[5]Similarly, in an earlier case, <u>State v. Weigold</u>, 160 N.W.2d 577, 580 (Minn. 1968), after defense counsel's objection to closure of the courtroom during the testimony of one witness was sustained, the prosecutor requested closure during testimony of another witness. Defense counsel stated, "I have no objection to this." On appeal, the Supreme Court enforced the waiver, rejecting defendant's argument that his personal consent was required to allow clearing the courtroom.

In this case, we conclude that Crawford did not merely fail to object, he agreed to a partial closure of the courtroom while the victim testified. Defense counsel advised on the record that the prosecutor would ask to close the courtroom. This strongly suggests that counsel and no doubt the court had previously discussed the issue off the record. When the prosecutor made the request, defense counsel objected to the victim's mother being present and later asked that the defense investigator also be present. The entire discussion concerned who should be present. Both parties either conceded the need for closure to the public during the rape victim's traumatic testimony. Or closure may have been a non-issue because defense counsel and Crawford could see that no member of the public was in the courtroom for the start of the trial, which would explain why the transcript does not record the court closing the courtroom or anyone being excluded when the victim was called as the trial's second witness. Whatever the reason for the defense concession, on this record we agree with the district court that the Minnesota Court of Appeals' waiver decision was an independent and adequate state ground precluding the grant of federal habeas relief on Crawford's Sixth Amendment public trial claim. Compare United States v. Lee, 374 F.3d 637, 650 (8th Cir. 2004) (upholding counsel's waiver of the Sixth Amendment right of confrontation), cert. denied, 545 U.S. 1141 (2005).

The judgment of the district court is affirmed.

BYE, Circuit Judge, dissenting.

A district court is precluded from addressing a constitutional claim in a habeas petition if a state court has already rejected the claim based on an independent and adequate state ground. White v. Bowersox, 206 F.3d 776, 780 (8th Cir. 2000). This includes the procedural default of a claim under state law. Id. The Supreme Court has dictated, however, "only a 'firmly established and regularly followed' state practice may be interposed by a State to prevent subsequent review by [federal courts] of a federal constitutional claim." Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (quoting

James v. Kentucky, 466 U.S. 341, 348-49 (1984)). Because I believe the waiver rule in the courtroom closure context was neither firmly established nor regularly followed by Minnesota courts when Crawford's public trial claim was deemed waived, I respectfully dissent.

When the Minnesota Court of Appeals heard Crawford's appeal there was just one published[6] appellate case, post Waller v. Georgia, 467 U.S. 39 (1984), which employed the waiver rule in the context of a courtroom closure. See State v. Bashire, 606 N.W.2d 449, 452 (Minn. Ct. App. 2000) (holding the defendant waived any claim of error by both failing to object at trial and affirmatively agreeing to a limited closure). In State v. Anderson, No. C2-95-1087, 1995 WL 747894, at *2 (Minn. Ct. App. Dec. 19, 1995) (unpublished), the Minnesota Court of Appeals had previously noted: "the failure of a defendant to object to a closure order does not waive the issue for subsequent review, because closure affects the defendant's substantive right to a public trial." In contrast, the Minnesota Court of Appeals in Bashire applied the waiver rule in the courtroom closure context holding: "by failing to object to courtroom closure *and* by agreeing to a limited closure, Bashire forfeited any error resulting from the absence of a finding supporting the closure." 606 N.W.2d at 452 (emphasis added). Thus, in Bashire, the defendant waived his ability to challenge his trial courtroom's limited closure where he failed to object and his attorney affirmatively agreed to the closure, stating: "The prosecutor's concern regarding other spectators in the courtroom, I don't have any difficulties with." Id. at 451. Two years later, the Minnesota Court of Appeals rendered its decision in this case. Relying on Bashire, the court held: "[b]ecause appellant did not object to the closure, appellant has waived the issue." State v. Crawford, No. C4-01-2073, 2002 WL 31056664, at *1 (Minn. Ct. App. Sept. 17, 2002) (unpublished). The Minnesota Court of Appeals did not discuss the agreement prong from Bashire, nor did it suggest Crawford had agreed to the closure. Instead, the court articulated a new version of the waiver rule,

---

[6]It should be noted unpublished appellate decisions in Minnesota are not precedential. See Minn. Stat. § 480A.08.

holding there is a waiver where the defendant passively fails to object to the closure. In sum, in <u>Bashire</u>, the Minnesota Court of Appeals applied the waiver rule where a defendant both failed to object to the closure and explicitly agreed to it. Then, in the instant case, the court again applied the waiver rule in the courtroom closure context, this time doing so simply because Crawford failed to object to the closure.[7]

Crawford argues the waiver rule in the courtroom closure context was neither firmly established nor regularly followed in Minnesota when it was applied to his case. I agree. There are at least two ways we could look at the above-cited series of cases. Neither provides for the application of the independent and adequate state ground doctrine to preclude federal review of this claim. By my reading, the Minnesota Court of Appeals, in the instant case, was applying a new incarnation of the waiver rule. This version, unlike the rule in <u>Bashire</u>, did not require the defendant to explicitly agree to closure for there to be a waiver.[8] This court has held, when a

_____

[7]Since <u>Crawford</u>, the Minnesota Court of Appeals has continued to apply the waiver rule as it was articulated in <u>Bashire</u>. <u>See</u> <u>State v. Delacruz</u>, No. A03-129, 2004 WL 193058, at *4 (Minn. Ct. App. Feb. 3, 2004) (unpublished) (finding no waiver where the defendant failed to object to a courtroom closure but did not explicitly agree to the closure); <u>State v. Campbell</u>, No. A06-539, 2007 WL 1121284, at *1 (Minn. Ct. App. April 17, 2007) (unpublished) (holding the defendant waived his courtroom closure challenge because he both failed to object to the limited closure and agreed to the closure through his attorney). These cases are irrelevant to our inquiry, however, as this court must decide whether the state procedural rule was firmly established and regularly followed in Minnesota when the rule was actually applied to Crawford. <u>See</u> <u>Ford</u>, 498 U.S. at 424 ("[A]n adequate and independent state procedural bar to the entertainment of constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied."); <u>Winfield v. Roper</u>, 460 F.3d 1026, 1036 (8th Cir. 2006) ("The procedural rule relied upon by the state court must be firmly established, regularly followed and readily ascertainable when it was applied." (internal quotation marks omitted)).

[8]The Court concludes, based on the extremely limited record, that Crawford affirmatively agreed to the closure here thus meeting the standard for a waiver under <u>Bashire</u>. <u>Ante</u> at 8. Although the Court recognizes there is no explicit agreement in

new procedural rule is first announced in the state case involving a habeas petitioner, it has certainly not regularly and consistently applied the rule such that it meets the standard for an independent and adequate state ground. White, 206 F.3d at 781. In White, we explained whether or not a rule was "implicit in, and correctly derived from, Missouri's prior precedents," or "appear[ed] in retrospect to form part of a consistent pattern of procedures, it should not be applied as a procedural default if the defendant could not be deemed to have been apprised of its existence." Id. We recognized the federal courts should not be simply gleaning a procedural rule from state precedent when the rule had not been explicitly announced previously. Thus, under White, the independent and adequate state ground doctrine should not be a bar to the district court's review of Crawford's claim because the Minnesota Court of Appeals applied a new version of the waiver rule to his case and there was no way for him to anticipate the court's holding. The waiver principle, as applied, was neither firmly established nor regularly followed prior to Crawford's case.

There is another way to view the case law. The Court suggests the Minnesota Court of Appeals was applying the waiver rule from Bashire in the instant case. Ante at 7-8. As noted above, however, there is no indication anywhere in the decision as to the Minnesota Court of Appeals finding Crawford having waived his right to challenge the closure because he affirmatively agreed to the closure. Even if the Crawford court was applying the rule from Bashire, however, this would constitute only the second application of the waiver rule in this context after Waller.[9] One

_____

the record, it concludes defense counsel must have agreed to the closure off the record because the record contains a discussion regarding who should be present during the minor victim's testimony. I am unwilling to preclude federal review of Crawford's constitutional claim based entirely on conjecture. Nevertheless, this court is not charged with undoing the Crawford court's misapplication of Bashire. We must simply determine whether the waiver rule, as applied in Crawford's case, was firmly established and regularly followed.

[9]The Minnesota Supreme Court has not recently spoken to the waiver issue in this context. In State v. Fageroos, 531 N.W.2d 199 (Minn. 1995), the Minnesota

application of the rule prior to its application in the defendant's case is not enough to render it firmly established and regularly followed. This circuit has not defined how many state court applications of a procedural rule might meet the standard for an independent and adequate state ground. As noted above, we held in <u>White</u> the procedural rule cannot be applied for the first time in a defendant's state case and still meet the standard. A brief look at the language from <u>Ford</u> suggests one application prior to the defendant's case would also not meet the standard. The rule must be "firmly established and regularly followed." Webster's Dictionary defines the word "regularly" as "at regular times or intervals," "according to plan, custom, etc.," or "usually; ordinarily." Random House Webster's College Dictionary 1110 (2d ed. 1999). Thus, the phrase "regularly followed" necessarily implies the rule must have been applied more than once. Likewise, the phrase "firmly established" implies the rule must have been applied repeatedly. Webster's Dictionary defines the word "firm" as "securely fixed in place" or "unyielding to change." <u>Id.</u> at 492. Use of the term "firmly" in the standard suggests the rule must have been both around for some time and remained the same despite repeated applications. Based on the plain language of the Supreme Court's standard, the Minnesota Court of Appeal's single application of the waiver rule in <u>Bashire</u>, no matter how well conceived and clearly presented, does not render the rule either firmly established or regularly followed. Here it is clear the Minnesota courts did not consistently and regularly apply the waiver rule in this context. Because the <u>Crawford</u> court altered the <u>Bashire</u> rule such lends further

---

Supreme Court's seminal decision regarding a trial court's obligations prior to a courtroom closure under Minn. Stat. § 631.045, the court did not reach the waiver issue because the colloquy concerning the closure was off the record and it was unclear whether or not the defendant had consented to or objected to the closure. <u>Id.</u> at 201. The Court points to <u>State v. Weigold</u>, 160 N.W.2d 577, 579-80 (Minn. 1968), where the Minnesota Supreme Court applied the waiver rule when the defendant did not object to a state-requested closure at trial and the defendant's counsel specifically agreed to the closure. <u>Ante</u> at 7, n.5. Because this opinion was written long before the enactment of Minn. Stat. § 631.045 and the Supreme Court's articulation of the public trial right in <u>Waller</u>, it does little to inform how the Minnesota Supreme Court would presently apply the waiver rule in this context.

credence to the conclusion the waiver rule has not been consistently followed by Minnesota courts.

The Court suggests there is "a basic consistency in the way the Minnesota appellate courts apply the general doctrine of waiver." <u>Ante</u> at 7. Our charge, however, is not to determine whether there is a "basic consistency" in the Minnesota appellate courts' general application of the waiver rule. It is to determine whether an independent and adequate state procedural rule—in this case the application of the waiver rule in the context of a courtroom closure—was firmly established and regularly applied at the time it was applied to Crawford. <u>White</u>, 206 F.3d at 780 ("Procedural default of a claim under state law may constitute an independent and adequate state ground, but only if the state procedural rule is firmly established, regularly followed, and readily ascertainable." (internal citation omitted)). Because Minnesota's waiver rule was neither firmly established nor regularly applied in the courtroom closure context when it was applied to Crawford, I respectfully dissent.

_____