STATE of Minnesota, Respondent,

v.

Charles Edward LINDSEY, petitioner, Appellant.

No. C0–00–1167.

Supreme Court of Minnesota.

Aug. 23, 2001.

John M. Stuart, State Public Defender, Susan J. Andrews, Scott G. Swanson, Assistant State Public Defenders, Minneapolis, for appellant.

Mike Hatch, Attorney General, Susan Gaertner Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, for respondent.

## OPINION

PAGE, Justice.

A jury found appellant Charles Lindsey guilty of first- and second-degree murder for the shooting death of Craig Clark, and guilty of attempted first- and second-degree murder for the shooting of Randy Lusby. No direct appeal was filed, but in March 2000 Lindsey filed a pro se petition for postconviction relief, claiming: (1) he was denied his right to a public trial; (2) the trial court erred when instructing the jury on eyewitness identification; (3) the trial court erred by refusing to redact an audiotaped interrogation before playing it to the jury; and (4) the trial court's restitution order should be vacated. Lindsey also raised prosecutorial misconduct, ineffective assistance of trial counsel, and police use of impermissibly suggestive identification procedures as issues. The postconviction court denied relief without holding an evidentiary hearing. In this court, in addition to the issues raised before the postconviction court, Lindsey argues that two of his convictions must be vacated under Minn.Stat. § 609.04, subd. 1(1) (2000). We affirm in part and remand for a determination of whether restitution to the murder victim's girlfriend was proper.

On December 30, 1993, Lindsey arrived at a St. Paul bar at about 12:30 a.m. accompanied by his brother, Freeman Lindsey, Freeman's girlfriend, Renie Bernier, and her uncle, Keith Richardson. When Freeman began arguing with the bartender, the bartender threatened to call the police and ordered the group to leave. Before leaving, Freeman picked up a stool and threw it over the bar.

When the group reached their car, Freeman realized that Lindsey was not with them and told Richardson to go back and get him. Richardson testified that, when he opened the door upon returning to the bar, he saw Lindsey talking to a man standing nearby, and saw Lindsey point the gun and fire. After the shooting, Richardson and Lindsey returned to the car. Bernier testified that, as they drove away, Lindsey said, "I think I killed someone in the bar," and that he had shot two people, one of them in the face or head. Freeman similarly testified that Lindsey said that he shot two people, one of them in the face, neck, or head. Richardson testified that Lindsey said, "I shot one of them marks in the face and I shot the other one in the head," and that both Lindsey and Freeman then "giggled a little bit." Richardson also testified that he then told Bernier that Lindsey and Freeman were crazy and asked her to take him home. Shortly after he was dropped off, Richardson called the police and reported what had happened.

The police arrested Lindsey at his mother's house at approximately 6:30 a.m. on December 30, 1993. At police headquarters, Sgt. Richard Freichels of the St. Paul Police Department conducted an audiotaped interview of Lindsey. Freichels testified that, as he was bringing Lindsey to jail after the interview, Freichels told Lindsey that the man Lindsey shot was probably going to die and that Lindsey would go to prison for murder. According to Freichels, Lindsey responded, "my un-

cle killed a few people; he only went to jail for eight years," and then laughed. Lindsey was charged with first- and second-degree murder under Minn.Stat. §§ 609.185, subd. 1, and 609.19, subd. 1(1) (2000), and first- and second-degree attempted murder under Minn.Stat. §§ 609.17 (2000), 609.185, subd. 1, and 609.19, subd. 1(1).

At trial, Lindsey was identified as the shooter by Richardson, Lusby, the bartender's sister, and a customer who also identified Lindsey as the shooter during a photo lineup. Over Lindsey's objection, the audiotape of the police interrogation was played to the jury during Freichels' testimony. Lindsey, testifying at trial in his defense, denied shooting either Lusby or Clark and, at one point, implicated Richardson as the shooter.

During the direct examination of one witness, the court interrupted and asked counsel for both parties to approach the bench for an off-the-record discussion out of the jury's hearing. Following this discussion, the court stated:

> Let me observe that some additional spectators have entered the courtroom and I need to call attention to the adults with them that minors under the age of seventeen are not permitted in the courtroom during a criminal trial. I have to ask them to leave the courtroom.

After a brief pause, the court said, "The record may indicate that they have now left the courtroom." Apparently two children left the courtroom during the pause.

Although initially the court did not provide any basis for excluding the children, it subsequently indicated that they were "under the age described [as being] proscribed by the statute." The parties agree that the court was referring to Minn.Stat. § 631.04 (1992).[1] Lindsey made no objection on the record to the exclusion of the children and the record does not reflect whether he objected during the off-the-record discussion. There is no indication of the identity of the children and their relation, if any, to Lindsey. Nor does the record indicate that anyone else was excluded from the courtroom at that or any other time during the trial.

On May 7, 1994, the jury returned verdicts of guilty on all four charges. The trial court sentenced Lindsey to consecutive terms of life in prison for the first-degree murder conviction and 240 months for the attempted first-degree murder conviction. No direct appeal was ever filed, but Lindsey did file a petition for postconviction relief. The postconviction court denied the petition without holding an evidentiary hearing. This appeal followed.

## I.

■ We will not reverse a postconviction court's decision absent an abuse of discretion, and will consider only whether sufficient evidence supports the postconviction court's conclusions. *Woodruff v. State*, 608 N.W.2d 881, 884 (Minn.2000). We first consider the issues Lindsey raises

---

1. The 1992 version of Minn.Stat. § 631.04 provided in pertinent part:

    A minor under the age of 17 who is not a party to, witness in, or directly interested in a criminal prosecution or trial before a district, county, or municipal court, may not be present at the trial. A police officer, constable, sheriff, or other officer in charge of a court and attending upon the trial of a criminal case in the court, shall exclude a minor under age of 17 from the room in which the trial is being held. This section does not apply when the minor is permitted to attend by order of the court before which the trial is being held.

    Section 631.04 was amended in 1998 to eliminate references to "county" or "municipal" courts. Act of Feb. 18, 1998, ch. 254, art. 2, § 73, 1998 Minn. Laws 158, 179.

through counsel and then turn to the additional issues Lindsey raises pro se.

## II.

During oral argument, we raised the question whether the statute on which the trial court relied to exclude minor spectators, Minn.Stat. § 631.04, encroaches on this court's authority to regulate matters of trial procedure in violation of the doctrine of separation of powers. *See State v. Olson,* 482 N.W.2d 212, 215 (Minn.1992). Because the parties had not briefed this issue, the court ordered supplemental briefs addressing (1) whether section 631.04 violates the separation of powers doctrine and, (2) if so, what relief is appropriate.

■■■ "[D]ue respect for coequal branches of government requires this court to exercise great restraint in considering the constitutionality of statutes particularly when the consideration involves what is a legislative function and what is a judicial function." *State v. Johnson,* 514 N.W.2d 551, 554 (Minn.1994). This court has "primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters and matters of trial and appellate procedure." *Olson,* 482 N.W.2d at 215. The legislature, in turn, determines matters of substantive law. *Johnson,* 514 N.W.2d at 554. The determination of whether section 631.04 encroaches upon a judicial function in violation of the separation of powers doctrine therefore turns on whether the statute deals with substantive or procedural law.

■■■ The legislature has the power to declare what acts are criminal and to establish the punishment for those acts as part of the substantive law. *State v. Olson,* 325 N.W.2d 13, 17–18 (Minn.1982). In contrast, the court regulates the method by which the guilt or innocence of one who is accused of violating a criminal statute is

determined. *State v. Wingo,* 266 N.W.2d 508, 513 (Minn.1978). Put another way, " '[a] statute is procedural when it neither creates a new cause of action nor deprives defendant of any defense on the merits.' " *Johnson,* 514 N.W.2d at 555 (citation omitted).

■■■ Lindsey argues that section 631.04 violates separation of powers because it attempts to control access to criminal trials, thereby encroaching on the judiciary's authority over courtroom functions. The state responds by arguing that: (1) section 631.04 is a statute of mixed substantive and procedural law, that if it is not clearly procedural, it cannot violate separation of powers, and that if it can reasonably be viewed as either substantive or procedural it should be found substantive because the courts must exercise great restraint before declaring a statute unconstitutional; (2) even if the statute is procedural, it does not violate separation of powers because it was enacted before a 1956 amendment to the Minnesota Constitution that stripped the legislature of rule-making powers and has not been superseded by any conflicting court rule; and (3) this court should permit section 631.04 to stand as a matter of comity.

■■■ As an initial matter, we emphasize the grave responsibility trial courts have in overseeing and regulating courtroom conduct and procedure during trials, including criminal trials. Minn. R. Gen. Prac. 2.02. Because an appellate court cannot glean from a transcript the atmosphere or particular threats to order and decorum in the courtroom, trial courts are vested with broad discretion in deciding matters of courtroom procedure. *Minneapolis Star & Tribune v. Kammeyer,* 341 N.W.2d 550, 559 (Minn.1983) (emphasizing, in determining whether a trial court abused its discretion "when it excluded the public from [a]

pretrial hearing or when it restricted access to portions of the record" from that hearing, that a "trial court must have control of its courtroom"); *see also Rice Park Props. v. Robins, Kaplan, Miller & Ciresi,* 532 N.W.2d 556, 556 (Minn.1995) (noting that "the trial court has considerable discretion in * * * furthering what it has identified as the interests of judicial administration and economy"). We consider the state's arguments with this discretion in mind.

First, we see no basis for concluding that section 631.04 is substantive in nature. Determining who may be present at a criminal trial has nothing to do with defining crimes or prescribing punishments. *See Johnson,* 514 N.W.2d at 554. Nor does section 631.04 create a new cause of action or deprive a defendant of any defense on the merits. *See Johnson,* 514 N.W.2d at 555. In short, the regulation of spectators in the courtroom during a criminal trial is procedural and has nothing to do with the substantive aspects of the offense or punishment.

■ The state cites Minn.Stat. § 480.059, subd. 7 (2000), which provides that "statutes relating to the pleadings, practice, procedure, and the forms thereof in criminal actions shall be effective until modified or superseded by court rule." The state argues that, even if the statute is procedural, it does not violate separation of powers because it has not been superseded by any conflicting court rule. But this court's authority over procedure in criminal actions is not derived from any grant of authority by the legislature, but from the court's inherent power. *Johnson,* 514 N.W.2d at 553. Therefore, the

legislature cannot restrict this court's authority to strike down procedural statutes to situations involving a conflicting court rule. *See id.* at 554 n. 5 ("Of course, if the legislature passes a statute in an area not already governed by a rule, the court, as a matter of comity, may let it stand.").

Finally, the state argues that the court should allow section 631.04 to stand as a matter of comity.[2] The state claims that the procedural/substantive distinction is not clear and therefore calls for the exercise of comity. The procedural matter in this case—regulating courtroom attendance at criminal trials—is particularly sensitive, however, given that it implicates a criminal defendant's constitutional right to a public trial. We can envision an application of this statute that would result in an error that rises to the level of a violation of the public trial guarantee. Accordingly, we decline the state's invitation to permit section 631.04 to stand as a matter of comity and conclude that it unconstitutionally encroaches upon a judicial function in violation of the separation of powers doctrine.

■ As such, it was error for the trial court to rely on section 631.04 to exclude the two children from the courtroom. The statute by its terms, however, does not grant to the defendant in a criminal action any particular right that was violated by its application in this case. The statute appears to be intended to protect individuals under the age of 17 from the unseemly details that may attend a criminal case. Accordingly, Lindsey appropriately relies on his Sixth Amendment right to a public trial in seeking a new trial.[3]

2. We have "occasionally permitted a statute to stand as a matter of comity, even where the legislature has encroached somewhat upon a judicial function, so long as the statute does not conflict with this court's inherent authori-

ty to make the final decision." *State by Humphrey v. Jim Lupient Oldsmobile Co.,* 509 N.W.2d 361, 363 (Minn.1993).

3. Both the federal and Minnesota constitutions provide that "[i]n all criminal prosecu-

As the United States Supreme Court has explained:

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions . . . .

*Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (citations and internal quotation marks omitted). Moreover, "[i]n addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Id.* To protect these values, the Supreme Court has established the following rules for when a criminal trial may be closed without violating the public trial guarantee:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller,* 467 U.S. at 48, 104 S.Ct. 2210; *see also State v. Fageroos,* 531 N.W.2d 199, 201 (Minn.1995) (adopting *Waller* standard).

In this case, the trial court's action was not a true closure, in the sense of excluding all or even a significant portion of the public from the trial. *See State ex rel. Baker v. Utecht,* 221 Minn. 145, 149, 21 N.W.2d 328, 331 (1946) (distinguishing removal of "persons of immature years" from removal of the entire public). In this

respect, this case is similar to *People v. Woodward,* 4 Cal.4th 376, 14 Cal.Rptr.2d 434, 841 P.2d 954 (1992), where the trial court ordered the courtroom doors locked during a portion of the prosecutor's closing argument, although members of the public already present in the courtroom were not required to leave. 14 Cal.Rptr.2d 434, 841 P.2d at 955. On appeal, the California Supreme Court concluded that, "although the court erred in failing to notify defendant of the closure, defendant's basic public trial right was not violated." *Id.* at 957. Instead, the court found that, "[u]nlike the situation in the public exclusion cases relied on by defendant, the courtroom was never cleared to remove all spectators for a significant period." *Id.* at 958.

Likewise, in *Peterson v. Williams,* 85 F.3d 39 (2d Cir.1996), the trial court excluded spectators from the courtroom during the trial testimony of an officer who was still engaged in undercover operations. 85 F.3d at 41. Following the officer's testimony, the court inadvertently failed to open the trial while the defendant testified briefly in his defense. *Id.* On appeal, the Second Circuit concluded that this "unjustified closure * * * was too trivial to amount to a violation of the [Sixth] Amendment." *Id.* at 42. The court clarified that a triviality standard should not be understood to dismiss a Sixth Amendment claim on the basis that the defendant was guilty anyway or did not suffer prejudice. *Id.* Rather, the court explained its inquiry was whether the actions of the court deprived the defendant of the protections guaranteed by the Sixth Amendment. *Id.*

■ Applying that standard in this case, we conclude that Lindsey was not deprived of the protections of a public

---

tions the accused shall enjoy the right to a * * * public trial." U.S. Const. amend. VI;

Minn. Const. art. I, § 6.

trial. At no time was the courtroom cleared of all spectators. The trial was open to the general public and the press at all times. Indeed, Lindsey does not contend and the record does not suggest that members of the general public and the press were absent during any stage of Lindsey's trial. Nor does the record suggest that Lindsey, his family, his friends, or any witnesses were improperly excluded. The only spectators excluded were two children of unknown age and unknown relationship to Lindsey. Therefore, the values sought to be protected by a public trial right were in fact protected. We therefore hold that the exclusion of the two children on the facts presented did not violate Lindsey's right to a public trial.

**III.**

■■■■ Lindsey next argues that the trial court erred when it refused to give the jury instructions he requested regarding the state's burden of proving identity. Jury instruction lies within the discretion of the trial court. *State v. Daniels*, 361 N.W.2d 819, 831 (Minn.1985). A trial court's instructions are evaluated as a whole. *Id.* at 831–32. A trial court need not give a requested instruction if the substance of the requested instruction is contained in the court's charge. *Id.* at 832.

■■■ Specifically, Lindsey sought to have the trial court give a one and a half page, single-spaced instruction.[4] In declining to give Lindsey's proposed instruc-

---

**4. Eyewitness Identification**

One of the most important issues in the case is the identification of the defendant as the perpetrator of the crime. The prosecution has the burden of proving identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

1. Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were the lighting conditions, whether the witness had had an occasion to see or know the person in the past and the stress the witness was under at the time of the offense.

2. Are you satisfied that the identification made by the witness subsequent to the offense was the product of his or her own recollection?

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant as a factor bearing on the reliability of the identification.

3. You may take into account any occasions on which the witness failed to make an identification of the defendant, or made an identification that was inconsistent with his identification at trial.

4. Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he or she is truthful, and consider whether he or she had the opportunity to make a reliable observation of matters covered in his or her testimony.

The prosecutors [sic] burden of proof extends to every element of the crime charged, this specifically includes the burden of proving beyond a reasonable doubt the identity of the perpetrator of the crime

tion, the trial court equated the requested instruction to closing argument on the subject. In addition, the trial court noted that the instruction suggests words that might distract the jury from the obligation to make findings beyond a reasonable doubt. In his argument to this court, Lindsey focuses our attention on one paragraph of the proposed instruction:

> The prosecution has the burden of proving identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

While this section of the proposed instruction is largely unobjectionable, we are satisfied that, when viewed in its entirety, the trial court was correct when it equated the proposed instruction to defense counsel's closing argument and noted that it could potentially distract the jury from making findings beyond a reasonable doubt.

Moreover, the instruction given by the trial court conveyed the relevant aspects of witness identification to the jury. That instruction reads:

> Testimony has been introduced in this case tending to identify defendant as the person observed at the time of the alleged offense. You should carefully evaluate this testimony. In doing so you should consider such factors as the opportunity of the witness to see the person at the time of the alleged offense,

the length of time the person was in the witness's view, the circumstances of that view including light conditions and the distance involved, the stress the witness was under at the time, and the lapse of time between the alleged offense and the identification.

> If the witness has seen and identified the person before trial and after the alleged offense, you should also consider the circumstances of that earlier identification, and you should consider whether in this trial the witness's memory is affected by that earlier identification.

*See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 3.19 (3d ed.1990). In addition, the trial court instructed the jury that the state had the burden of proving beyond a reasonable doubt each element of the crimes charged, including the element that it was the defendant who committed the acts. Thus, the jury was adequately instructed on the state's burden of proof of identity. *See State v. Spann,* 287 N.W.2d 406 (Minn.1979). The trial court did not abuse its discretion by refusing to give Lindsey's proposed instruction and the postconviction court did not err when it denied relief on this claim.

## IV.

█ Lindsey also argues that the trial court committed error when it refused to redact portions of his audiotaped interrogation before it was played to the jury. An evidentiary ruling by a trial court will not be reversed absent an abuse of discretion, and a defendant who asserts that a trial court erroneously admitted evidence has the burden of showing the error and

---

charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

[*U.S. v. Telfaire*], 469 F.2d 552[ ] (D.C.Cir. 1972)[.]

any resulting prejudice. *State v. Grayson,* 546 N.W.2d 731, 736 (Minn.1996).

■ Before trial, Lindsey moved to suppress statements he made to the police during his interrogation. The trial court denied the motion, finding that Lindsey's statements were made with knowledge and understanding and, therefore, were admissible.[5] Lindsey then argued that the interrogator made inflammatory and prejudicial statements during the interrogation that the interrogator knew were not based on fact, and that those portions should be redacted. The investigator accused Lindsey of lying, asked him about gang involvement, and told him, "[Y]ou been had," "I've got you made on this," "[Y]ou're gonna go," and "I just have to get you charged this morning." Lindsey further claims that the interrogator lied to him about the evidence the police had against him. The trial court allowed the audiotaped interrogation to be played to the jury in its entirety, and the postconviction court found the interrogator's statements to be probative and not unfairly prejudicial.

■ The mere fact that a "defendant waives his right and agrees to talk with the police does not mean that everything that is asked by the officers or said by the defendant in response is necessarily admissible." *State v. Hjerstrom,* 287 N.W.2d 625, 627 (Minn.1979). We further stated in *Hjerstrom* that "[t]he only tenable rule is that, assuming a proper objection, immaterial and irrelevant portions of an extrajudicial interrogation of a defendant should generally not be received in evidence." 287 N.W.2d at 627.

Relying on this language, Lindsey argues that, "[c]ertainly if a defendant's truthful comments about his prior misconduct must be redacted, then an officer's lies and gratuitous comments about appellant's credibility must go." Lindsey's argument is unpersuasive given the obvious distinction between the admission of otherwise inadmissible statements about a defendant's prior crimes or imprisonment, *see* Minn. R. Evid. 404(b), and statements made during a police interrogation concerning the crime with which a defendant is presently charged. The interrogator's statements were relevant because they assisted the jury in putting Lindsey's statements in context. They also were not unfairly prejudicial. Moreover, the record reflects that Lindsey's trial counsel had ample opportunity to cross-examine the interrogator about his statements. We therefore conclude that the trial court did not clearly abuse its discretion in concluding that the interrogator's statements were relevant and not inflammatory or unduly prejudicial and the postconviction court's decision denying relief was not clearly erroneous.

V.

■ Lindsey next challenges the trial court's restitution order. At sentencing, the trial court ordered that Lindsey pay $32,682.93 in restitution and that Lindsey's prison earnings be applied toward that obligation. Lindsey claims that, because he is indigent, the trial court abused its discretion by ordering him to pay restitution, and seeks vacation or modification of the restitution order.

Lindsey acknowledges that under Minn. Stat. § 609.10, subd. 5 (2000), it is within a trial court's discretion to order restitution when imposing a felony sentence. He argues, however, that the trial court failed to consider his income and resources as re-

---

**5.** Lindsey has not raised the trial court's failure to suppress his statements as an issue during these postconviction proceedings.

quired by Minn.Stat. § 611A.045 (2000), and *State v. Maidi*, 537 N.W.2d 280 (Minn. 1995). However, the postconviction court, which was also the trial court, specifically stated that it "considered the petitioner's ability to pay when it ordered restitution to be paid from prison earnings." We see no abuse of discretion in the amount of restitution ordered in light of Lindsey's ability to pay.

Lindsey also argues that several of the murder victim's funeral expenses, including the cost of funeral clothes, postage stamps for thank-you cards, a hotel room for a relative and reception, the cost of hiring a soloist, a limousine service, and other miscellaneous items were unreasonable. Minnesota Statutes § 611A.04 (2000) explicitly provides for funeral expenses, and we have held that this statute gives trial courts "significant discretion to award restitution for a victim's expenses." *State v. Tenerelli*, 598 N.W.2d 668, 671 (Minn.1999) (trial court within its discretion in ordering restitution for expenses related to a traditional Hmong healing ceremony). Given the explicit authorization for funeral expenses to be included as part of restitution, and the broad discretion afforded the trial court in awarding restitution, the postconviction court was not clearly erroneous in rejecting this claim.

Lindsey next asserts that the trial court erred when it ordered him to pay restitution for expenses incurred by the murder victim's girlfriend who was also the mother of the victim's child. A crime victim is entitled to receive restitution, Minn.Stat. § 611A.04, subd. 1(a) (2000), and for these purposes when "the victim is a natural person and is deceased, 'victim' means the deceased's surviving spouse or next of kin." Minn.Stat. § 611A.01(b) (2000). It is not clear from the record whether the claimed expenses for moving costs for Clark's girlfriend (and, presum-

ably, Clark's child) are properly included. We therefore remand this issue to the postconviction court to determine whether there is a basis for this portion of the restitution award.

## VI.

Lindsey also claims that he was subject to improper multiple convictions by being convicted of the second-degree charges as lesser-included offenses of the first-degree charges. Under Minn. Stat. § 609.04, subd. 1(1) (2000), a defendant convicted of a crime may not be convicted of "[a] lesser degree of the same crime." *See also State v. Pflepsen*, 590 N.W.2d 759, 766 (Minn.1999). In *Pflepsen*, we reaffirmed:

> [W]hen the defendant is convicted on more than one charge for the same act * * * the court [is] to adjudicate formally and impose sentence on one count only. The remaining conviction(s) should not be formally adjudicated at this time. If the adjudicated conviction is later vacated for a reason not relevant to the remaining unadjudicated conviction(s), one of the remaining unadjudicated conviction(s) can then be formally adjudicated and sentence imposed * * *.

*Id.* at 766 (quoting *State v. LaTourelle*, 343 N.W.2d 277 (Minn.1984)) (alterations in original).

Here, a jury found Lindsey guilty of all four counts charged, but he was convicted of only the first-degree murder and attempted first-degree murder offenses. These convictions were for the separate acts of murdering Clark and shooting Lusby. The trial court did not formally adjudicate the finding of guilt on the two second-degree charges. Because the trial court did not formally adjudicate separate convictions on the same criminal act, the court did not violate section 609.04.

## VII.

We turn to Lindsey's pro se arguments. Lindsey asked the state in pretrial discovery whether any witnesses to be called at trial were police informants. Lindsey now alleges that the prosecutor engaged in prosecutorial misconduct by failing to disclose that Richardson was a police informant. Richardson was a witness in the unrelated criminal trials of two individuals. With respect to one of the trials, Richardson apparently contacted the St. Paul police regarding the crime and gave grand jury testimony against the defendant in that trial. However, there is no evidence that Richardson had an established relationship with the police or that he was compensated for his assistance. Moreover, even if we concluded that the prosecutor should have disclosed Richardson as an informant, Lindsey was free to explore Richardson's relationship with the police on cross-examination, and thus was not prejudiced by any discovery violation. *State v. Daniels,* 332 N.W.2d 172, 179 (Minn.1983). Therefore, there is no basis for concluding that the prosecutor engaged in misconduct by failing to identify Richardson as an informant.

Lindsey next alleges that he was denied his constitutional right to a direct appeal through ineffective assistance of counsel. He claims that after the sentencing he requested to speak to his trial counsel about an appeal, but that his attorney refused and told Lindsey that he would be working closely with appellate counsel to appeal the convictions and would be in contact with Lindsey within 60 days. In his petition for postconviction relief, Lindsey alleged that his trial counsel never discussed with him the appeal process or time limitations for bringing a direct appeal and claims the failure constitutes ineffective assistance of counsel. Lindsey does not assert, however, that he has ever attempted to file a direct appeal. Accordingly, his claimed deprivation of the right to direct appeal is not ripe for adjudication.[6]

Finally, Lindsey asserts that the police used impermissibly suggestive identification procedures. He contends the police initially showed witnesses from the bar a photo lineup that included photographs of both Lindsey and his brother, but not of Richardson. Lindsey argues that, because a photograph of Richardson was not included, the photo lineup was impermissibly suggestive. Lindsey cites no authority for the proposition that a photo lineup must include the person the defendant asserts committed the crime, however. Nor does he explain why the photo lineup used was, in and of itself, impermissibly suggestive. Nothing in the lineup or the procedures used suggests Lindsey was singled out for identification. *State v. Ostrem,* 535 N.W.2d 916, 921 (Minn.1995). Accordingly, the postconviction court did not abuse its discretion in denying the petition on this ground as well.

For the foregoing reasons, we conclude that the postconviction court did not err when it denied Lindsey's petition for postconviction relief. We remand the case to the postconviction court, however, to determine whether the award of restitution

---

**6.** A defendant is entitled to at least one right of review by an appellate or postconviction court. *Hoagland v. State,* 518 N.W.2d 531, 534 (Minn.1994). Although we do not reach the merits of Lindsey's claim that he was denied his right to a direct appeal, we note that the postconviction proceedings have afforded him ample opportunity to assert challenges to his convictions and that we have thoroughly considered each challenge that he has raised. Therefore, it is unclear whether any issues remain to be pursued through a direct appeal.

to the murder victim's girlfriend was proper.

Affirmed in part and remanded.