*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0290**

State of Minnesota,
Respondent,

vs.

Jonathan Joseph Corbett,
Appellant.

**Filed December 15, 2014
Affirmed
Stoneburner, Judge***

Ramsey County District Court
File No. 62-CR-12-7811

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Julie Loftus Nelson, Nelson Criminal Defense & Appeals, PLLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Johnson, Judge; and Stoneburner, Judge.

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STONEBURNER**, Judge

Appellant challenges the sufficiency of the evidence to support his convictions of second-degree murder, attempted second-degree murder, first-degree assault, and second-degree assault, arguing that the testimony of the eyewitnesses was unreliable. We affirm.

## FACTS

On September 21, 2012, several people who were at a residence at 597 Thomas Avenue in Saint Paul witnessed two separate incidents involving two men with guns. One of the men was known to the witnesses as Carl Wilks, a resident of 598 Thomas Avenue, located across the street from 597 Thomas Avenue. Appellant Jonathan Joseph Corbett challenges the witnesses' identification of him as the other man involved in the incidents.

The first incident occurred in the late afternoon when a group of people were preparing for a party at 597 Thomas Avenue, the home of Shermicia Dancy and Michael Henderson. In addition to Shermicia Dancy and Henderson, the group included Christopher Redmon, Crystal Dancy, Crystal Dancy's child A.D., and Kimberly Turnage.

Crystal Dancy and A.D. went across the street, to 598 Thomas Avenue, to see a newborn baby. A half-hour later, A.D. ran back to 597 Thomas Avenue and said that Crystal Dancy was in danger. Redmon, Shermicia Dancy, Henderson, and Turnage went to 598 Thomas Avenue and knocked on the door. The door was opened, then slammed shut, then reopened with two men pointing guns at Redmon's face. Redmon was two feet away from the men. He recognized one man as Carl Wilks, a resident of 598 Thomas

Avenue. Turnage, who was about 12 feet from the door, with no one in between, looked at the scene for about a minute before returning to 597 Thomas Avenue. Eventually everyone from 597 Thomas Avenue returned there.

More people arrived at 597 Thomas Avenue for the party, including Sheila Cook, Marcus Cook, Kasmira Cummings, Derrick Dumas, and Bryant Dumas. Later Wilks and another man came to 597 Thomas Avenue uninvited. Henderson escorted Wilks out of the house and argued with him in front of the house. Turnage, Redmon, the Cooks, and the Dumases were on the front lawn. The man who accompanied Wilks remained nearby and at some point began firing a gun into the crowd. Henderson was shot and later died from his injuries; Derrick Dumas and Bryant Dumas were each shot multiple times. Marcus Cook was injured by a bullet that grazed him. The shooter left the scene.

Police arrived at the scene. Officer Joseph Higgens was given descriptions of the shooter by three people, all of whom described the shooter as a black male, light-skinned, between the ages of 18 and 24, with dreadlocks. Someone gave Corbett's name as the suspect. The investigators created a photo lineup that included Corbett's photograph.

Turnage, who was at the hospital with her sons Derrick and Bryant Dumas, viewed the photo lineup at about 2:30 a.m. on September 22, 2012. Officer Paul Dunnom, who showed Turnage the lineup, was not aware of which photograph in the lineup was an identified suspect. Turnage picked Corbett's photograph out of the lineup as the shooter and as the person involved with Wilks in the earlier incident. Turnage said that she was 50 percent certain of the identification.

At about 2:45 a.m. on September 22, 2012, Officer Dunnom showed the lineup to Redmon, who also picked Corbett's photograph and identified him as the person who had held a gun to his face earlier in the day and as the shooter. Redmon stated that he was 100 percent certain of his identification.

Corbett was charged with second-degree murder of Henderson, attempted second-degree murder of Derrick Dumas, Bryant Dumas, and Marcus Cook, first-degree assault of Derrick Dumas and second-degree assault of Bryant Dumas and Marcus Cook. Corbett moved to suppress the results of the photo lineup identifications. The district court denied the motion, finding that the photo lineups were administered non-suggestively and according to proper protocol.

At Corbett's September 2012 jury trial, both Redmon and Turnage identified Corbett as the shooter. At trial, Turnage increased her confidence in the identification to 95 percent. The jury found Corbett guilty of all charges except attempted second-degree murder of Marcus Cook. The district court entered convictions on the guilty verdicts and sentenced Corbett to 479 months in prison. This appeal followed.

## DECISION

Corbett argues that the identification evidence is insufficient to support his convictions. An appellate court reviews a sufficiency-of-the-evidence challenge to "determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow a jury to reach a guilty verdict." *State v. Hurd*, 819 N.W.2d 591, 598 (Minn. 2012). A guilty verdict will not be overturned if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a

4

reasonable doubt, could reasonably conclude that the defendant is guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

Identification of the perpetrator is a question of fact determined by the jury. *State v. Miles*, 585 N.W.2d 368, 373 (Minn. 1998). The jury determines the weight and credibility of each witness's testimony, and the testimony of a single credible witness can support a conviction. *Id.*

The court instructed the jury to evaluate the weight and credibility of eyewitness identification by considering:

> the opportunity of the witness to see the person at the time of the alleged offense, the length of time the person was in the witness' view, the circumstances of that view including light conditions and distance involved, the stress the witness was under at the time, . . . the lapse of time between the alleged offense and the identification[, and] whether . . . in this trial the witness' memory is affected by [an] earlier identification.

10 *Minnesota Practice*, CRIMJIG 3.19 (2006); *see State v. Lindsey*, 632 N.W.2d 652, 662 (Minn. 2001) (quoting this language with approval).

On appeal, Corbett's only argument is that identification testimony of Turnage and Redmon is not credible, citing Justice Wahl's concurring opinion in *State v. Lee*, 266 N.W.2d 181, 182 (Minn. 1978) (Wahl, J., concurring), for the proposition that "where the only evidence connecting the defendant to the crime is the eyewitness identification testimony, [the case] must be carefully scrutinized." Corbett argues that social science studies have shown that eyewitness misidentification is the single greatest cause of wrongful convictions in the United States, citing H. Patrick Furman, *Wrongful*

5

*Convictions and the Accuracy of the Criminal Justice System*, Colo. Law., Sept. 2003, at 14.

Corbett argues that (1) neither witness had a good opportunity to view the shooter; (2) their identifications were "likely clouded" by the incident earlier in the day; (3) their identifications of Corbett as involved in the earlier incident are not reliable; (4) the level of stress the witnesses were under makes the identifications unreliable; and (5) the witnesses' level of confidence in their identifications is irrelevant. But "[a]ny details affecting the reliability of the testimony, such as the opportunity of the witness to observe the defendant at the time in question, go to the weight the trier of fact should give to the testimony, not to its admissibility." *State v. Mosley*, 853 N.W.2d 789, 798 (Minn. 2014). Here the jurors, who also heard testimony about other witnesses' descriptions of the shooter, found Turnage's and Redmon's identifications credible, and we defer to that credibility determination. *See id.* ("The testimony of an eyewitness that the accused is the person who committed the crime is a legitimate means of proving a defendant's guilt.").

**Affirmed.**