**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0342**

State of Minnesota,
Respondent,

vs.

Lionel Curtis Drew,
Appellant.

**Filed January 3, 2017
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-15-13027

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Halbrooks, Judge; and Kirk, Judge.

## S Y L L A B U S

Sequestration of a deliberating jury is a matter of trial procedure, not of substantive law; therefore Minn. R. Crim. P. 26.03, subd. 5, controls, not Minn. Stat. § 631.09 (2014).

**KIRK**, Judge

Appellant challenges his convictions of ineligible person in possession of a firearm and terroristic threats. He argues that the district court: (1) abused its discretion in denying his motion to sequester the jury during deliberations; (2) committed plain error by admitting the victim's statement to officers that he saw appellant with the gun, in violation of the Sixth Amendment's Confrontation Clause and the Minnesota Rules of Evidence; and (3) committed plain error by admitting an officer's testimony that the gun was loaded and ready to fire, in violation of the Minnesota Rules of Evidence. Appellant requests that this court either reverse his convictions and order a new trial based on the evidentiary errors, or remand to the district court for further proceedings on the question of whether the jury may have been tampered with or improperly influenced. Because we conclude that the district court did not abuse its discretion in denying appellant's motion to sequester the jury, and because the alleged evidentiary errors did not affect appellant's substantial rights, we affirm.

## FACTS

On May 14, 2015, respondent State of Minnesota charged appellant Lionel Curtis Drew with being an ineligible person in possession of a firearm and terroristic threats. The district court held a two-day jury trial. Before the state presented its case, the district court instructed the jurors not to conduct any research related to the case or to discuss the case with anyone, including each other. During opening statements, defense counsel claimed

2

that because the state did not conduct fingerprint or DNA testing on the gun recovered from the scene, it could not meet its burden of proof on the firearm-possession charge.

On the first day of trial, Investigator Steven Lorentz of the City of Brooklyn Center Police Department testified that on the day in question, he and other members of the Hennepin County Violent Offender Task Force were conducting surveillance in unmarked squad vehicles and plain clothes in a commercial area. Shortly after 2:00 p.m., two people, later identified as appellant and E.D., came to the attention of the officers because they were arguing. E.D. yelled at appellant, "Then shoot me then. Then shoot me." Appellant quickly moved towards E.D. in an aggressive manner, and E.D. began walking backwards. Appellant's hands were in the front pocket of his hoodie, and he was moving them up and down. Investigator Lorentz testified that there was something heavy "clunking" down in appellant's pocket. Investigator Lorentz believed law enforcement needed to intervene.

E.D. continued to back up until he was approximately three to five feet in front of Investigator Lorentz's vehicle. E.D. continued saying, "If you're going to shoot me[,] then shoot me," and then fled. Appellant, who still had his hands in the front pocket of his hoodie said, "I'll fucking shoot your ass," and then chased after E.D. Members of the task force pursued appellant both by vehicle and on foot.

After losing sight of appellant behind a pillar, Investigator Lorentz "heard a thud and then a scraping on the ground," which he believed to be "[t]he sound of a metal gun hitting . . . concrete." Investigator Lorentz was approximately four feet away when he heard the sound, and he did not see the gun land or see appellant throw it. After helping

3

Officer Jason Kotecki of the City of Brooklyn Center Police Department arrest appellant, Investigator Lorentz saw a gun in the area where he had heard the sound.

Hennepin County Crime Scene Investigator Devan McNamara was called to the scene to process the gun. Investigator McNamara testified that she met with Deputy Jason Hughes of the task force, and then photographed the gun, visually examined it, unloaded it, and packaged the ammunition she removed from the gun separately so it could be transported safely back to the crime lab. Investigator McNamara identified photographs she took of the gun on-scene, as well as the actual gun and ammunition she processed, which were all admitted into evidence.

Investigator McNamara also testified about the physical state of the gun and explained that it was in rusty condition and that the hammer was in the cocked position when she collected it, which meant that the gun could be fired as soon as the trigger was pulled. Investigator McNamara testified that Deputy Hughes did not order DNA or fingerprint testing because he saw appellant throw the gun. The only forensic testing conducted on the gun was a test fire to determine whether the gun had been used in another crime.

Before releasing the jurors at the end of the first day of trial, the district court again instructed them not to discuss the case with anyone and not to conduct any research related to the case.

On the second day of trial, Officer Kotecki testified that while he chased appellant on foot, appellant came around a pillar and saw that he and Investigator Lorentz were coming toward him. Appellant's left side then "dipped back around that pillar." Officer

4

Kotecki did not see what appellant did with his hands, but he was approximately five feet away from appellant and heard the sound of "metal hitting the ground." After placing appellant under arrest, Officer Kotecki saw the gun on the ground by the pillar.

Deputy Hughes testified that he also chased appellant after E.D. fled and appellant followed. Deputy Hughes did not lose sight of appellant as he followed on foot and closed the distance between them. Appellant kept his hands in his front hoodie pocket as Deputy Hughes chased him, which reinforced Deputy Hughes's belief that appellant had a gun.

Deputy Hughes testified that appellant was headed off by other officers and turned back toward him. Deputy Hughes saw appellant pull "a black revolver out of his hoodie pocket" and throw "the gun down on the ground between the pillar and [a] planter box." After appellant was arrested, Deputy Hughes located, searched, and interviewed E.D.

At the end of his testimony, the state asked Deputy Hughes, "[A]re you aware that [the] firearm was loaded?" Deputy Hughes responded, "I believe it was, yes." On cross-examination, Hughes testified that neither E.D., who was not in the immediate area when appellant was arrested, nor C.L., another witness, saw appellant throw the gun. On re-direct, the state asked Hughes, "In the course of your investigation, did [E.D.] tell you he had seen [appellant] with a gun?" Hughes responded, "He said [appellant] showed him the gun earlier."

Other than a foundation objection that was overruled, defense counsel did not object to any of the testimony or evidence presented by the state. At the close of evidence, the jurors were again instructed not to discuss the case with anyone, including each other.

5

After final instructions, the district court informed the jurors that they would deliberate until 4:30 p.m., then return on Monday morning if they had not reached a verdict. The jury was given the case at 12:04 p.m. on Friday afternoon. At the end of the day, the jury sent the district court a note stating, "On count 1, all twelve jurors are 100% sure they are unable to reach a unanimous verdict." Outside of the hearing of the jury, the district court made a record, indicating that the parties had discussed the note and that the court had decided to instruct the jurors to resume deliberating on Monday at 9:00 a.m. The district court noted that "there was no disagreement on this jury instruction."

The district court then gave reasoned and appropriate instructions to the jurors on reaching a verdict and informed them that they would resume deliberations on Monday morning. The district court sent the jury back to the jury room at 4:19 p.m. and then asked appellant:

> Are you all right with the jury separating for the weekend versus sequestering them in a hotel or something of the sort over the weekend? So they would commence deliberations all throughout the evening and weekend. Or are you okay with them breaking, going home, coming back at 9 o'clock on Monday morning to resume their deliberations?

Appellant responded, "I think I want them in a hotel."

Defense counsel moved to sequester the jury over the weekend because of a concern that the jury would otherwise "lose momentum." The state noted that Minn. R. Crim. P. 26.03, subd. 5(1), allows the district court to deny a sequestration motion without the defendant's consent. The district court denied appellant's motion and explained that if juries were routinely sequestered it would create significant logistical and scheduling issues

6

and that the court did not believe appellant's case "to be of such notoriety or of such highly prejudicial matters that are likely to come to the attention of the jurors." The district court noted that it appreciated the possible loss of momentum, but it concluded that the jurors could continue deliberating on Monday. The district court also noted that it had repeatedly instructed the jury not to discuss the case or to conduct research into the case, so the jurors knew to avoid those prejudicial activities.

The jury reconvened at 9:00 a.m. the following Monday and delivered unanimous guilty verdicts on both counts at 10:46 a.m. The district court polled the jurors and released them.

This appeal follows.

## ISSUES

I.      Did the district court abuse its discretion when it denied appellant's motion to sequester the jury during deliberations?

II.     Did the district court commit plain error when it admitted E.D.'s statement to an officer that he saw appellant with a gun?

III.    Did the district court commit plain error when it admitted testimony that the gun was loaded and ready to fire?

## ANALYSIS

**I.      The district court did not abuse its discretion when it denied appellant's motion to sequester the jury during deliberations.**

The district court has wide latitude in granting or denying motions to sequester the jury. *State v. Blom*, 682 N.W.2d 578, 607-08 (Minn. 2004). This court will not reverse

the district court's decision absent a clear abuse of discretion and a showing of prejudice to the appellant. *Id.* "[T]he mere separation of the jury . . . without more, does not raise a presumption of prejudice." *State v. Sanders*, 376 N.W.2d 196, 206 (Minn. 1985); *see also State v. Green*, 719 N.W.2d 664, 673 (Minn. 2006) (applying *Sanders*). Rather, "prejudice will be presumed upon a showing of any private communication or contact or any other circumstance suggestive of improper influence or jury tampering, direct or indirect, and the state will bear the burden of overcoming the presumption." *Sanders*, 376 N.W.2d at 206; *see also Green*, 719 N.W.2d at 673.

The Minnesota Legislature is responsible for determining "matters of substantive law," while the Minnesota Supreme Court is responsible for "the regulation of evidentiary matters and matters of trial and appellate procedure." *State v. Lindsey*, 632 N.W.2d 652, 658 (Minn. 2001) (quotation and citation omitted). "[T]he court regulates the method by which the guilt or innocence of one who is accused of violating a criminal statute is determined." *Id.* The issue of whether a statute is substantive or procedural "involves the construction of statutes and rules which is subject to de novo review." *State v. Azure*, 621 N.W.2d 721, 723 (Minn. 2001).

Appellant argues that the district court erred when it relied on Minn. R. Crim. P. 26.03, subd. 5, instead of Minn. Stat. § 631.09 (2014), in denying his request to sequester the jury over the weekend. Minn. R. Crim. P. 26.03, subd. 5, leaves the sequestration of deliberating jurors to the discretion of the district court and provides in relevant part:

> (2) On Motion. Any party may move for sequestration of the jury at the beginning of trial or at any time during trial. Sequestration must be ordered if the case is of such notoriety

8

or the issues are of such a nature that, in the absence of sequestration, highly prejudicial matters are likely to come to the jurors' attention. Whenever sequestration is ordered, the court in advising the jury of the decision must not disclose which party requested sequestration.

(3) During Deliberations. Unless the court has ordered sequestration under paragraph (2), the court may allow the jurors to separate over night during deliberations.

Minn. Stat. § 631.09 conflicts with Minn. R. Crim. P. 26.03, subd. 5, in that it requires

sequestration of deliberating jurors. Minn. Stat. § 631.09 provides that:

At the close of the evidence and after the court has charged the jury, the jury may decide the case in court or retire for deliberation. If the jury cannot agree on a verdict without retiring, the court shall swear one or more officers to take charge of the jury. The jury must be kept together in some private and convenient place. No person may be permitted to speak or communicate with any juror, unless by order of court, nor may a person listen to its deliberations. The jury must be returned to court upon agreeing on a verdict or when so ordered by the court. In case of mixed juries counties shall provide adequate, separate quarters for male and female jurors with proper accommodations. If the county fails to provide proper accommodations, the court shall order the jurors to be housed in a suitable hotel for the night.

This section applies only if the jury has failed to agree.

Because the rule and statute conflict, this court must first determine whether sequestration

is a procedural matter. *See Azure*, 621 N.W.2d at 723.

We conclude that Minn. Stat. § 631.09 is a procedural, rather than a substantive,

statute because whether jurors are sequestered is not related to defining crimes or

prescribing punishments, nor does it deprive a defendant of any defense on the merits or

create a new cause of action. *See Lindsey*, 632 N.W.2d at 659. Because the judiciary

9

derives its authority to regulate criminal procedure from its inherent power, a court rule that conflicts with a procedural statute takes precedence. *Id.* (citing *State v. Johnson*, 514 N.W.2d 551, 553, 554 n.5 (Minn. 1994)).

Because Minn. R. Crim. P. 26.03, subd. 5, controls here, we conclude that the district court did not abuse its discretion when it relied on Minn. R. Crim. P. 26.03, subd. 5, in denying appellant's sequestration motion.

Appellant also argues that the district court abused its discretion under Minn. R. Crim. P. 26.03, subd. 5, by denying his request to sequester the jury. Because appellant provides no factual support or legal authority to support his arguments on this point, he has forfeited appellate review on this issue. *See State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997) ("Where a defendant asserts error, but fails to address the error in his appellate brief, the issue is deemed waived."); *see also State v. Beaulieu*, 859 N.W.2d 275, 278-79 (Minn. 2015). Appellant asks this court to remand for further proceedings.

We conclude that appellant forfeited this issue, and we decline to remand for further proceedings.

II. **The district court did not commit plain error when it admitted E.D.'s statement to an officer that he saw appellant with the gun.**

This court generally "will not consider a challenge to the admission of evidence 'unless . . . a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.'" *State v. Rossberg*, 851 N.W.2d 609, 617-18 (Minn. 2014) (quoting Minn. R. Evid. 103(a)(1)); *State v. Banks*, 875 N.W.2d 338, 346 (Minn. App. 2016), *review denied* (Minn. Sept. 28, 2016).

The Minnesota Supreme Court has noted that it is "particularly important" for counsel to object to potential hearsay evidence because of the "complexity and subtlety of the operation of the hearsay rule and its exceptions" so "that a full discussion of admissibility can be conducted at trial." *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006). Where a defendant fails to object to the admission of evidence, our review is under the plain-error standard. *See* Minn. R. Crim. P. 31.02; *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Here, appellant failed to object to the admission of E.D.'s statement, so this court will apply the plain-error standard.

"The plain error standard requires that the defendant show: (1) error; (2) that was plain; and (3) that affected substantial rights." *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002) (citing *Griller*, 583 N.W.2d at 740 (citing *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1548-49 (1997))). "An error is plain if it is clear and obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). When an appellant failed to object to the evidence at trial, and on appeal fails "to prove that the error affected his substantial rights, the claim . . . is not properly before us," and we need not consider the other plain-error factors. *State v. Tscheu*, 758 N.W.2d 849, 864 (Minn. 2008); *see also State v. Matthews*, 800 N.W.2d 629, 634 (Minn. 2011) (*Matthews II*, unrelated to *Matthews*).

An error affects a defendant's substantial rights when it has the effect of denying the defendant a fair trial. *Id.* at 863. The third prong of the plain-error test is satisfied if there is a "reasonable likelihood that the error had a significant effect on the jury's verdict."

11

*See State v. Vance*, 734 N.W.2d 650, 660 n.8 (Minn. 2007), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). This requires consideration of whether the alleged error was prejudicial and affected the outcome of the case. *Matthews*, 779 N.W.2d at 549.

Appellant alleges that the admission of E.D.'s statement through Deputy Hughes, that appellant had showed him the gun earlier, violated the Sixth Amendment's Confrontation Clause and Minnesota Rules of Evidence 404(b), 801(c), and 802. Rule 404(b) addresses the admissibility of other-crimes evidence, and rules 801(c) and 802 address the admissibility of hearsay statements. Appellant argues that the district court committed plain error by failing to exclude this evidence.

Appellant also argues that admission of E.D.'s statement was prejudicial and it affected the outcome of his case, thereby affecting his substantial rights. This court is not persuaded by appellant's arguments. The content of E.D.'s statement was not particularly strong evidence in the context of appellant's two-day trial, during which the state presented a significant amount of eyewitness testimony describing appellant's demeanor, two eyewitnesses who heard the gun hit the ground, and an eyewitness who saw the gun in appellant's hand. Here, where E.D.'s statement was introduced quickly and with no follow-up questioning, and where there was sufficient, even overwhelming, evidence of appellant's guilt presented to the jury, there is not a reasonable likelihood that E.D.'s statement substantially affected the verdict.

Appellant failed to meet the "heavy burden" of establishing that the error of admitting E.D.'s statement affected his substantial rights. *See Rossberg*, 851 N.W.2d at

618. Where an appellant cannot show that an error affected his substantial rights, this court need not address whether the district court committed plain error. *Banks*, 875 N.W.2d at 346. Furthermore, where appellant failed to object to such a statement, this court is not inclined to conclude that the district court committed plain error by declining to interfere with defense counsel's trial strategy.

### III. The district court did not commit plain error when it admitted testimony that the gun was loaded and ready to fire.

Again, we generally will not consider a challenge to the admission of evidence, unless an objection was made on the record. *Rossberg*, 851 N.W.2d at 617-18. Where a defendant fails to object to the admission of evidence, our review is under the plain-error standard. *See* Minn. R. Crim. P. 31.02; *Griller*, 583 N.W.2d at 740. When an appellant both failed to object to the admission of evidence at trial, and fails to satisfy the third factor of the plain-error standard by proving that the alleged error affected his substantial rights, his claim is not properly before us and we need not consider the other two factors. *Matthews II*, 800 N.W.2d at 634; *Tscheu*, 758 N.W.2d at 864.

Appellant alleges that the admission of testimony that the gun was loaded and ready to fire violated Minnesota Rules of Evidence 401 and 402, which address the relevancy of evidence. Appellant also argues that admitting evidence that the gun recovered from the scene was loaded and ready to fire was plain error because it was irrelevant to either charge. Appellant concludes that admission of this evidence affected his substantial rights, but this court does not find his arguments persuasive.

13

The evidence that the gun was loaded was presented to the jury through two witnesses, Investigator McNamara and Deputy Hughes. When the first witness, Investigator McNamara, testified that the gun was loaded, she was describing the gun's condition when she processed it, including the fact that she unloaded it to make it safe for transport. Although defense counsel did not ask Investigator McNamara any questions about whether the gun was loaded, he did call the physical state of the firearm into question by asserting that the state's failure to conduct forensic testing on the gun was fatal to its case. Additionally, absent unique or extraordinary circumstances, the state is entitled to offer evidence of a crime in the condition in which it was found. Here, the gun was described to the jury as it was found by law enforcement, and this court concludes that appellant has failed to establish that his substantial rights were affected by the admission of Investigator McNamara's testimony.

The second witness, Deputy Hughes, testified that he believed the gun was loaded. Deputy Hughes gave a brief answer to one question by the state on direct examination. There were no follow up questions by either party. When the significant amount of evidence presented to the jury in support of each conviction is examined, there is not a reasonable likelihood that Deputy Hughes's testimony that the gun was loaded substantially affected the verdict.

Appellant again failed to meet the "heavy burden" of establishing that his substantial rights were affected, and this court need not address whether the district court committed plain error when it allowed the jury to hear testimony that the gun was loaded and ready to fire. *See Rossberg*, 851 N.W.2d at 618.

14

## D E C I S I O N

Because Minn. R. Crim. P. 26.03, subd. 5, governs the sequestration of deliberating jurors, the district court did not abuse its discretion when it relied on the rule in denying appellant's sequestration motion.  Because appellant's substantial rights were not affected by admission of E.D.'s statement, or by admission of the testimony regarding the condition of the gun, we affirm his convictions.

**Affirmed.**